**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| Elsie Marino, | ) | |
| | ) | Civil Action No. _____ |
| Consumer-Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY NADEL d/b/a | ) | **VERIFIED COMPLAINT** |
| LAW OFFICES OF JEFFREY NADEL; | ) | |
| SCOTT E. NADEL; | ) | **ENFORCEMENT ACTION** |
| DANIEL MENCHEL; | ) | **CLAIM FOR DAMAGES** |
| MICHAEL MCKEOWN; | ) | |
| | ) | |
| CALIBER HOME LOANS, INC.; | ) | |
| | ) | |
| THE BANK OF NEW YORK MELLON, | ) | |
| AS TRUSTEE FOR CIT MORTGAGE | ) | |
| LOAN TRUST 2007-1 | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**JURISDICTION AND VENUE**

1.     This is an action brought by an unrepresented, individual consumer pursuant to

15 U.S.C. § 1692k(d) *to enforce liability* of the Defendants for their violations of the Fair Debt

Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. §§ 1692 et seq. as amended; Congress

granted Consumer this private right of action in a primary enforcement role—as private attorney

general—to strictly enforce the provisions of the FDCPA according to its terms, and to enforce

payment of her actual damages assessed under 15 U.S.C. § 1692k(a)(1). See S. Rep. No. 95-382

p.5; Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008) ("The FDCPA

enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less

sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

2.      Consumer-Plaintiff has standing under Article III of the Constitution of the United States, and does hereby invoke jurisdiction of the federal judicial district thereunder.

3.      This Court has subject-matter jurisdiction over this action because it presents a federal question, 28 U.S.C. § 1331, and is brought by a consumer pursuant to 15 U.S.C. § 1692k which grants the United States District Courts jurisdiction to hear this action without regard to the amount in controversy.

4.      Venue lies properly in this federal judicial district pursuant to 28 U.S.C. §§ 100(2), 1391(b)(2), as Defendants conduct business within this district and the violative events took place in this federal judicial district.

## THE PARTIES

5.      **Consumer-Plaintiff, Elsie Marino (herein "Consumer")**, is a natural person having her place of abode located at 12701 Darnestown Road, Gaithersburg, MD 20878, and is at all times relevant to this action a "consumer" as that term is defined within 15 U.S.C. §§ 1692a(3) and the "creditor" defined in 15 U.S.C. § 1692a(4).

6.      **Defendant JEFFREY NADEL d/b/a LAW OFFICES OF JEFFREY NADEL** (hereinafter "Jeffrey Nadel" or "Nadel Firm" as context requires) is at all times relevant a debt collector who is also sometimes an attorney licensed by the State of Maryland who practices law throughout the State through his firm, the Law Offices of Jeffrey Nadel, which maintains its principal office in Prince George's County, Maryland. According to http://www.mdcourts.gov Maryland Judiciary website, Jeffrey Nadel is an active attorney #8401010035 whose address is Law Offices of Jeffrey Nadel, 4041 Powder Mill Road, Suite 415, Calverton, MD 20705, and who has brought, as the overwhelming majority of his cases, approximately 403 foreclosures,

131 as attorney, and 272 as plaintiff, from July 19, 2016 through July 19, 2017. The Nadel Firm's principal business is collection of debt, § 1692a(5), and has issued numerous communications in the above actions, and has personnel specifically assigned to work on debt collection activity.

7.      **Defendant SCOTT NADEL**, aka Scott E. Nadel, ("Scott Nadel") is at all times relevant a debt collector who is also sometimes an attorney licensed by the State of Maryland who practices law as a member of the Nadel Firm. According to http://www.mdcourts.gov Maryland Judiciary website, is an active attorney #0312170089 whose address is Law Offices of Jeffrey Nadel, 4041 Powder Mill Road, Suite 415, Calverton, MD 20705, and who brought, as the overwhelming majority of his cases, approximately 649 foreclosures, 423 as attorney, and 226 as plaintiff, from July 19, 2016 through July 19, 2017.

8.      **Defendant DANIEL MENCHEL** ("Daniel Menchel") is at all times relevant a debt collector who is also sometimes an attorney licensed by the State of Maryland who practices law as a member of the Nadel Firm. According to http://www.mdcourts.gov Maryland Judiciary website, is at all times relevant an active attorney #8606010257, whose address is 6605 Amleigh Road, Baltimore, MD 21209-2603, and who brought, as the overwhelming majority of his cases, at least 215 foreclosures, 7 as an attorney, and 208 as plaintiff, from July 19, 2016 through July 19, 2017.

9.      **Defendant MICHAEL MCKEOWN** ("Michael McKeown") is at all times relevant a debt collector who is also sometimes an attorney licensed by the State of Maryland who practices law as a member of the Nadel Firm. According to http://www.mdcourts.gov Maryland Judiciary website, is at all times relevant an active attorney #9812160220 whose address is Law Offices of Jeffrey Nadel, 4041 Powder Mill Road, Suite 415, Calverton, MD

3

20705, and who brought, as the overwhelming majority of his cases, approximately 24 foreclosures as plaintiff from July 19, 2016 through July 19, 2017.

10.     **Defendant THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1** ("BNYM"), according to the https://egov.maryland.gov website, is a New York corporation, having its principal office at 48 Wall Street, New York, NY 10015; its resident agent in Maryland is The Corporation Trust, Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, MD 21093-2264.

11.     **Defendant CALIBER HOME LOANS, INC.** ("Caliber") is a Delaware corporation having its principal office located at 650 Madison Avenue, New York, NY 10022; its resident agent in Maryland is The Corporation Trust, Incorporated, 2405 York Road, Suite 201, Lutherville-Timonium, MD 21093-2264. Attached exhibits from Defendants assert that Caliber is the "Servicer" for BNYM.

12.     In summary, Defendants Jeffrey Nadel, Scott Nadel, Daniel Menchel, and Michael McKeown are collectively the "Substitute Trustees." Defendants Scott Nadel and the Nadel Firm, together with the Substitute Trustees, are collectively the "Nadel Defendants." Defendant Caliber is a non-bank servicer. Each Defendant is attempting to collect the debt they assert is owed or due to another: Defendant BNYM, as trustee for another.

13.     Defendants Caliber and BNYM are unrelated to the Nadel Defendants and each other by common ownership, and unaffiliated with the Nadel Defendants and each other by corporate control.

## FACTUAL CLAIMS

14.     Consumer incorporates the foregoing paragraphs as though the same were set forth at length herein.

15.     On June 5, 2006, the Consumer had entered into a proposed consumer transaction (the "transaction") seeking to borrow $693,000.00 on her place of abode[1] and intended and used primarily for personal, family, and household purposes; the debt ("debt"), defined within 15 U.S.C. § 1692a(5), is asserted by Defendants' communications to arise from this transaction; Consumer's own credit was extended in the transaction to create the debt and Consumer *merely assumed the position of "borrower."* None of the Defendants offered or extended credit to Consumer creating a debt, and none are Lender under any deed of trust with Consumer.

16.     Congress requires a **creditor** at the threshold of consumer debt collection activity. The Fair Debt Collection Practices Act ("FDCPA"), provides in relevant part:

> § 1692g. Validation of debts [Section 809 of Pub. Law]
> (a) Notice of debt; contents—Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> **(2) the name of the <u>creditor</u> *to whom the debt is owed*;**

15 U.S.C. § 1692g(a)(2) (emphasis added).

17.     The clear and unambiguous language of § 1692g(a)(2) requires "the name of the creditor to whom the debt is owed" be provided by each debt collector to the consumer subsequent to the initial communication unless contained in the initial communication. Congress defines "creditor" in the FDCPA itself:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, **but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another**.

15 U.S.C. § 1692a(4) (emphasis added).

---

[1] Consumer and her husband were already seized of the property/ place of abode by deed dated the same day.

18.     The Act excludes BNYM, the Substitute Trustees, and each of the Defendants from the definition of "creditor" because they are persons that received an assignment or transfer of the debt in default solely for the purpose of facilitating collection of such debt for another, or stand in the shoes of such person; with respect to the debt, they are debt collectors without a creditor.

19.     15 U.S.C. § 1692e broadly provides in relevant part:

§ 807. False or misleading representations
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

20.     Consumer brings this action against Defendants as to their direct and vicarious liability for their communications within the past year with Consumer and third parties in connection with an attempt to collect a consumer debt. The least sophisticated consumer would have known, after reading the entirety of those communications from each Defendant and considering them together, that each Defendant sought to collect a debt on behalf of BNYM, trustee, and believe that BNYM, as trustee, was, therefore, the current creditor to whom she owed her debt. The problem for the Defendants is that, regardless of who owns the debt (if any), BNYM is not "the creditor," the Substitute Trustees are not "the creditor," and there is no person named in the communications that qualifies under 15 U.S.C. §§ 1692g(a)(2) and 1692a(4) to be named as "the creditor to whom the debt is owed" in order to validate the debt.

21.     Courts have held that a violation of § 1692g(a) is automatically a violation of § 1692e because it is a use of materially false, deceptive, or misleading representation or means in connection with the collection of any debt.

6

**Nadel Firm's first communication to Consumer**

22.     The Nadel Firm mailed Consumer an unsolicited letter dated January 23, 2017 signed by Jeffrey Nadel and Scott E. Nadel, **Exhibit A**. The letter is Nadel Firm's "initial communication" with Consumer under § 1692g.

23.     On February 21, 2017, having received no further communication from the Nadel Firm, Consumer mailed via Certified Mail # 7016 2140 0000 6515 7238 the Nadel Firm a Notice of Dispute of Debt pursuant to 15 U.S.C. § 1692g, **Exhibit B**, disputing, among other things, the entire debt and the identity of the creditor, and requesting, among other things, validation, verification, and specifically "the name of the creditor to whom the debt is owed." Consumer also denied consent to communicate with third parties per § 1692c(b).

24.     Consumer has received no response to the Notice of Dispute and so Consumer believed that, without obtaining verification and unable to validate, the Nadel Firm and its principal had ceased collection activity.

**Caliber's communication in the Land Records of an
Assignment of Mortgage/Deed of Trust**

25.     On July 3, 2017, Consumer received a communication transmitted by Caliber Home Loans, Inc. entitled Assignment of Mortgage/Deed of Trust ("Assignment") by which, for value, The Bank of New York Mellon, As Trustee For CIT Mortgage Loan Trust 2007-1 acquired an interest in the deed of trust from the transaction[2]; the Assignment was recorded on June 14, 2017 at Book 54441, Page 337 in the Land Records of Montgomery County, Maryland regarding the alleged debt. The Assignment, was dated and notarized on April 07, 2017, and transmits, among other things, Consumer's name and mentions a Mortgage in the amount of

---

[2] There is nothing in the public record indicating that BNYM, as trustee, or purported CIT Mortgage Loan Trust 2007-1 had ever received an interest in the alleged promissory note from the transaction prior to the June 27, 2017 foreclosure filing in the Maryland court.

7

$693,000.00 "executed by" the Consumer and her husband related to the transaction, and includes information describing the Property which is Consumer's place of abode. Consumer printed the Assignment from the Land Records public website, a copy of which is attached as **Exhibit C**.

26.     The Assignment was public notice to the Consumer and to the world (to all third parties) and the Land Records was inconvenient place for Consumer to receive it.

27.     Caliber had no prior consent of the Consumer given directly to Caliber to communicate or record the Assignment.

28.     Caliber was without the express permission of a court of competent jurisdiction to communicate or record the Assignment.

29.     The Assignment did not disclose, under § 1692e(11), that the debt collector is attempting to collect a debt as is required for the initial written communication, and did not disclose that the communication is from a debt collector as is required of each subsequent communication.

## Nadel Firm's second communication to Consumer

30.     Consumer received a letter from Nadel Firm dated April 19, 2017 and signed by Jeffrey Nadel, Scott E. Nadel, and Daniel Menchel, on behalf of the Nadel Firm. The letter, **Exhibit D**, states on each page that it is an attempt to collect a debt and any information obtained will be used for that purpose. Among other things, the Nadel Firm represent in the letter that:

This firm has been authorized by the Servicer, (Caliber Home Loans, Inc.) and the Creditor of the above referenced home loan (hereinafter referred to as the "loan") to contact you regarding the status of your account. The Creditor (also called the Holder, Lender and Beneficiary) has authorized the Servicer and this firm to act on its behalf regarding the loan.

\* \* \*

This letter serves as further notice that Caliber Home Loans, Inc. intends to enforce the provisions of the Security Instrument.

\* \* \*

8

You must pay the amount in default, and any further amounts that accrue, by the 30th day from the date of this letter, which is the close of business on May 19, 2017, or we shall, on behalf of our client, immediately and without further demand, accelerate the maturity date of the loan, and declare the total balance immediately due and payable. As a consequence, your property may then be scheduled for foreclosure, and all fees associated with foreclosing on your property will be added to the amount needed to bring the loan current.

* * *

The following language does not in any way mean that Caliber Home Loans, Inc or anyone acting on its behalf is attempting to hold you personally liable for the loan. This language is merely required to inform you of your rights as they refer to Caliber Home Loans, Inc's ability to foreclose on your property per the loan documents if the loan is not timely brought current.

The letter then closes with the notice required to be given in "the initial communication" under § 1692g(a), and no subsequent communication was given within five days of the letter or received by Consumer stating the name of the "Creditor." The letter is an initial communication subsequent to the April 07, 2017 Assignment in default.

31.     While the letter identifies Caliber as the Servicer, it only refers to the unnamed "Creditor" euphemistically as "also called the Holder, Lender and Beneficiary" and fails to state "the name of the creditor to whom the debt is owed" as required by § 1692g(a)(2). This material omission is part of the false, deceptive, and misleading representation and means used by the Defendants in connection with the collection of the debt, § 1692e.

32.     In Janetos v. Fulton Friedman & Gullace, LLP, 15-1859 (7th Cir. 2016), Plaintiffs brought suit alleging that defendant had violated §§ 1692e, 1692e(10), and 1692g(a)(2) of the Act by failing to disclose the current creditor's name:

Portions of § 1692e are drafted in broad terms, prohibiting the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." For such claims, we must assess allegedly false or misleading statements to determine whether they could have any practical impact on a consumer's rights or decision-making process-that is, whether they represent the kind of conduct the Act was intended to eliminate.

For § 1692g(a)(2), however, that decision has been made for us. In enacting

9

§ 1692g(a)(2), Congress determined that a debt collector must include in its § 1692g(a) notice "the name of the creditor to whom the debt is owed." With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize. The undisputed facts show such a failure here. Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough.

33. The Act's provision, § 1692g(a), requiring giving notice in the initial communication by a debt collector that the debt will be considered valid unless the consumer disputes the debt within a thirty-day period, nowhere gives the debt collector the right to consider the debt valid. See also § 1692g(d).

## Notice from the Maryland court to the Consumer

34. On July 3, 2017, Consumer received a letter dated June 28, 2017, **Exhibit E**, from Barbara H. Meiklejohn, Clerk of the Circuit Court for Montgomery County, Maryland, advising Consumer that the case, "Jeffrey Nadel, et al, vs. Elsie A Marino, et al" to "foreclose deed of trust," was received on June 27, 2017 and assigned case number 433888-V.

35. Also that same day, as a result of the foreclosure filing, which transmitted information regarding the alleged debt to the Clerk of the Circuit Court for Montgomery County, Maryland, Consumer received a barrage of six separate solicitations, dated between the 28th and 29th of June, from attorneys referring to that pending foreclosure action, and offering bankruptcy and or debt relief. This has caused Consumer more embarrassment and mental anguish, to think that Consumer's name and information regarding the alleged debt is appearing in the public and on databases and lists.

## The legal action brought by the Nadel Defendants in the Maryland court

36. On June 27, 2017, Defendants Jeffrey Nadel, Scott Nadel, Daniel Menchel, and Michael McKeown of 4041 Powder Mill Road, Suite 415, Calverton, MD 20705, as Substitute

Trustees, brought a legal action against Consumer by filing an "Order to Docket Suit" in "foreclosure."

37. On July 7, 2017, Substitute Trustees served Consumer via Certified Mail # 7016 3010 0000 2529 8473 a copy of eighty pages filed in Case Number 433888-V Substitute Trustees brought to "foreclose deed of trust" for BNYM, beneficiary by virtue of the Assignment, concerning Consumer's place of abode located at 12701 Darnestown Road, Gaithersburg, MD 20878. The papers filed in the foreclosure[3], attached as **Exhibit F**, assert, among other things, the following:

38. The Order to Docket Suit is signed by Scott Nadel on behalf of the Nadel Firm, and indicates that Substitute Trustees are plaintiffs in the action.

39. The Deed Of Removal and Appointment Of Successor Trustees, indicates that it was executed on June 8, 2017 by Defendant BNYM, as Trustee, and indicates that the four Substitute Trustees, and each one of them, may act independently for trustee BNYM.

40. The Affidavit of Debt indicates that "the amount of indebtedness owed under the Deed of Trust recorded in Liber 32623, Folio 635, is $701,021.49 plus Per Diem amounts of $52.33, the alleged debt arising from the transaction. The Affidavit of Debt indicates that it was

---

[3] Consumer uses the term "foreclosure" but does not stipulate that the Maryland foreclosure action is foreclosure in fact because the Circuit Court for Montgomery County, Maryland, is not "a judicial district or similar legal entity in which such real property is located" under § 1692i that requires a plaintiff be the creditor of the consumer defendant. Also Consumer's place of abode is not commercial real property located in Montgomery County but is property primarily acquired by her and used for her personal, family, or household purposes. Maryland law does not distinguish foreclosure against a consumer's personal property or require a current creditor of the consumer be involved. Consumer only conducts her communications, transactions, and has consumer goods for personal, family and household purposes. Consumer does not consent to her status being anything but that protected as a natural person/consumer pursuant to 15 U.S.C. 1692 et seq. as amended and Title 15 U.S.C. Defendants and the Maryland court incorrectly identify Consumer as being a person in commerce as a borrower, debtor, resident, a citizen of a county of, a STATE of , with intrastate real property and/or real estate within those entities. In doing so they have sought to strip Consumer of her interstate identity without her consent and authority and against her will and all her federally protected consumer rights and protections.

executed by Defendant BNYM by Caliber as its attorney in fact, dated June 9, 2017, signed by Naomi Feistel, Authorized Officer.

41.     Date of Default. In a communication dated June 9, 2017 by Naomi Feistel, "Authorized Officer" of Defendant BNYM, entitled Affidavit of Default Pursuant to Md. Ann. Code RP § 7-105.1, Defendants allege that the default for which the foreclosure action has been initiated occurred on September 2, 2016. This Affidavit is a communication to the Maryland court via the Nadel Defendants which transmits information regarding the alleged debt and relates to the collection of the alleged debt, and relates to the monthly statements generated by Caliber addressed to Consumer Ms. Marino which are an attempt to obtain payment directly from her also.

42.     Caliber's generated monthly statements, communicating the Assignment for recording in the Land Records, the Nadel Firm's April 19, 2017 letter to Consumer, Nadel Defendants' bringing the Order to Docket Suit in the Maryland court, and mailing Consumer the communications filed in the court are each steps in the process of obtaining liquidation of Consumer's place of abode, and part of a strategy to make collection of a debt by way of foreclosure sale more likely; they are communications in connection with the collection of a debt, as defined within 15 U.S.C. § 1692a(2). Their actions in seeking foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA.

43.     A majority of courts of appeals that have addressed the issue has concluded that foreclosure itself is debt collection under the FDCPA because the purpose of foreclosure is to obtain payment on the underlying debt. Accord Glazer v. Chase Home Finance LLC, 704 F.3d 453, 460 (6th Cir. 2013). ("[T]he FDCPA does not define 'debt collection.'") Nor does it expressly delineate the set of activities that are "in connection with the collection of any debt." In

12

Heintz v. Jenkins, 514 U.S. 291 (1995), the Court concluded that "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts"[4] and, thus, is subject to the FDCPA, 514 U.S. at 294 (citing Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings")).

44.     The weight of authority is that mortgage foreclosure is debt collection under the FDCPA:

> [T]he weight of authority [is] that foreclosure itself constitutes debt collection. See, e.g., Kaymark, 783 F.3d at 179, Glazer, 704 F.3d at 461. Whether the mortgage note holder can pursue further relief against the consumer for deficiencies after foreclosure does not alter the fact that the foreclosure process itself involves the collection of a debt under the FDCPA. See Piper, 396 F.3d at 236 ("if a collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA.") (quoting Piper v. Portnoff Law Associates, 274 F. Supp. 2d 681, 687 (E.D. Pa. 2003)).
>
> See also Romea v. Heiberger & Associates, 163 F.3d 111, 116 (2d Cir. 1998) (discussing that notice required under Maryland's in rem eviction procedure involved debt collection under the FDCPA). As Romea makes clear, "the fact that [a] letter also served as a prerequisite to commencement of the [eviction] process is wholly irrelevant to the requirements and applicability of the FDCPA." Id.; see also Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227, 234 (3d Cir. 2005) (rejecting argument that debt collector's conduct "cannot be found to be covered by the FDCPA because all it ever tried to do was enforce a lien in the manner dictated by [state law]").
>
> The Fifth Circuit has held that "the entire FDCPA can apply to a party whose principal business is enforcing security interests but who nevertheless fits § 1692a(6)'s general definition of a debt collector." Kaltenbach v. Richards, 464 F.3d 524, 528 (5th Cir. 2006).

Brief of Amicus Curiae Consumer Financial Protection Bureau, Ho v. Recontrust, No. 10-56884, Ninth Circuit Court of Appeals, ("Ho Brief"). "The Fourth Circuit followed Romea in concluding that a debt collector's 'actions surrounding [a] foreclosure proceeding were attempts to collect [a] debt.' Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006)

---

[4] This describes the Nadel Defendants.

(citing Romea, 163 F.3d at 116)." Brief of Amicus Curiae Consumer Financial Protection Bureau, Cohen v. Ditech et al, Case No. 17-950, 2d Cir., Doc. 38, page 21 of 39, filed June 1, 2017. Maryland court rules on deficiency judgments allow any "party in interest" in a foreclosure action to file a Motion for Deficiency Judgment within three years of the final ratification of the auditor's report. "Where, as here, a court sitting in equity may award a deficiency judgment against a consumer on a consumer debt, the Act manifestly applies." Id. at 16 of 39. The CFPB's official interpretation of what constitutes debt collection, the limits of which is undefined in the Act, is entitled to Chevron[5] deference.

45.     It is also the CFPB's position that, "As to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA." Ho Brief. citing Bridge v. Ocwen, 6th Cir.

46.     At all times, Consumer was an unrepresented consumer, without an attorney, and remains so in the foreclosure action.

47.     Without a creditor, the Nadel Defendants cannot avoid the FDCPA's broad consumer protections for Consumer and strict liability for each of the debt collector Defendants by communicating, as they did, in the form of misleading formal pleadings as a deceptive means to circumvent the requirements of §§ 1692g(a)(2) and 1692e. The communications from the Nadel Defendants are not exempted under 1692c and 1692e from coverage by the FDCPA.

48.     Nadel Defendants had no prior consent of the Consumer given directly to them to communicate the filings with the Maryland court.

49.     Nadel Defendants were without "the express permission of a court of competent jurisdiction" to communicate and file the Order to Docket Suit with the state court.

---

[5] Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

**Caliber's violative communications with Consumer and third parties**

50.   Caliber, in connection with the collection of the debt, communicated the Affidavit of Debt to the Maryland court, and to the public through the Nadel Defendants on June 27, 2017. Caliber did not have Consumer's prior consent given directly to Caliber or any other Defendant, or the express permission of a court of competent jurisdiction to communicate about the Consumer's debt, nor was it reasonably necessary to effectuate a postjudgment remedy *without a judgment or creditor*. The recipient Maryland court is a person other than "a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). Likewise, the public, all third parties, includes persons other than "a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." Caliber asserts itself in conclusory fashion to be BNYM's attorney in fact without authority from BNYM. The Affidavit of Debt certifies that the affiant is making an *assertion of a conclusion*, not facts, that the Substitute Trustees have the right to foreclose; that assertion based on "the secured party's ownership/holding of the Note and/or Deed of Trust"[6] is the use of materially false, deceptive, and misleading representation and means, § 1692e, because it transmits more than one meaning, one of which is false. Consumer takes it to mean that Defendants are attempting foreclosure based on the ownership of the Deed of Trust alone.

---

[6] This phraseology, used as a basis for foreclosure throughout the foreclosure affidavits (communications), is incomplete and inconclusive, and does not set forth facts establishing that the foreclosing party *is* the plaintiff, and *is* the person who the FDCPA treats as the creditor or stands in the shoes of the person the FDCPA treats as the creditor. See e.g., Affidavit of Default Pursuant to Md. Ann. Code RP § 7-105.1; Affidavit Certifying Ownership of Debt Instrument Pursuant to Md. Ann. Code RP § 7-105.1(E)(2)(III); Deed of Removal and Appointment of Successor Trustees; Affidavit in Compliance With § 521 of the Service Members Civil Relief Act; Affidavit of Debt.

51.     Unrepresented Consumer disputes the entire debt asserted by Defendants to be owed or due and and disputes Defendants' right to collect or foreclose deed of trust in connection with said debt arising from the consumer transaction.

52.     Caliber generated monthly statements attempting to collect the debt and threatening foreclosure, **Exhibit G**. The statements are communications which transmit to Consumer an Amount Due, the amount necessary to cure the default, and that failure to bring her loan current may result in fees and foreclosure – the loss of her home.

### Defendants are standing in the shoes of BNYM, a debt collector.

At all times mentioned herein, each of the Defendants is a "debt collector" as that term is defined within 15 U.S.C. § 1692a(6) and *not* a "creditor" as defined within 15 U.S.C. § 1692a(4). No verification or evidence exists to validate that Defendants are acting for a "creditor" as defined in the Act. The FDCPA's definition of debt collector does not include any requirement that a debt collector be engaged in an activity by which it makes a demand for payment or even as part of an action designed to induce the debtor to pay. See Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014) ("As we have previously explained, however, 'nothing in [the] language [of the FDCPA] requires that a debt collector's misrepresentation [or other violative actions] be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay. To the contrary, we concluded that, 'to be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice "in connection with the collection of any debt" or in an "attempt to collect any debt."') See also Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-34 (4th Cir. 2007); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 375-77 (4th Cir. 2006).

53.     BNYM, as trustee, subsequent to alleged default, received transfer of the debt on April 07, 2017 as evidenced by the Assignment, and Caliber then became servicer for BNYM.

16

Thus, Caliber stands in the shoes of a debt collector, and *became* debt collector for another debt collector, BNYM, collecting for another.

54.     Each of the Defendants is a person who uses the mails in a business the principal purpose of which is to obtain payment or liquidation of debts, either by personal solicitation or legal proceedings, and principally or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

55.     Each of the Defendants' business is principally attempting to obtain payment on an alleged debt using instruments and instrumentalities of interstate commerce which used and resulted from Consumer's credit application using her federal Social Security Account Number. Thus each of the Defendants additionally uses instruments and instrumentalities of interstate commerce evidencing obligations of the United States of America in its business the principal purpose of which is to obtain payment or liquidation of debts, either by personal solicitation or legal proceedings, and principally or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

56.     Based on the exhibits, each of the Defendants is collecting the debt for "another," namely the beneficial interest holders of CIT MORTGAGE LOAN TRUST 2007-1 in the case of trustee BNYM, and BNYM in the case of the other Defendants.

57.     BNYM is a person who principally or regularly engages in the purchase and collection of defaulted debts and attempts to collect them. BNYM appears numerous times in the public record as grantee of deeds of trust related to defaulted consumer debts for the principal purpose of foreclosure. By its name, Defendant THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1 is a trustee for a special purpose vehicle which allegedly accepted assignment of the debt in default for the sole purpose of

17

facilitating collection for beneficial interest holders, not as a bona fide trustee holding money or property for beneficial interest holders. BNYM "receive[ed] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

58.     Each of the Substitute Trustees became one as a business for the principal purpose of bringing the foreclosure action (see Deed of Removal and Appointment of Successor Trustees), and is a person who principally or regularly tries to obtain payment of consumer debts through legal proceedings, not as a bona fide trustee holding money or property for beneficial interest holders. The Substitute Trustees, and each of them, "receive[ed] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

59.     BNYM, Caliber, and the Substitute Trustees cannot be excluded from the definition of "debt collector" including those engaged in debt collection that "is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." 15 U.S.C. § 1692a(6)(F)(i). Each of BNYM's acceptance of a defaulted debt, and the Substitute Trustees pursuing foreclosure—for the sole purpose of collection for another—is central to its business, not merely incidental to a bona fide fiduciary duty managing *money or property* for another.

60.     Consumer did not enter into and does not have an escrow arrangement with Defendants; they do not have a special relationship resulting from purported debt obtained in default; there is no resulting bona fide fiduciary duty involved; there is no resulting lien, perfected or unperfected.

61.     Based on the Maryland Judiciary website and exhibited communications, the whole reason that the Nadel Firm and its members were retained by BNYM and Caliber was to attempt, through the process of foreclosure based on the Assignment, to collect on the alleged

18

"loan" after default. With respect to the alleged debt, Caliber and each one of the Nadel Defendants stands in the shoes of a debt collector; they are acting on behalf of a client debt collector; there is no person or entity involved that is or qualifies as "the creditor to whom the debt is owed" under the FDCPA, and Defendants cannot be categorized as neither.

62.     BNYM used Caliber and the Nadel Defendants in order to shield itself from liability under the FDCPA. BNYM exercised control or had the right to exercise control over the collection activities of Caliber and the Nadel Defendants. BNYM and Caliber each exercised control or had the right to exercise control over the collection activities of the Nadel Defendants.

63.     BNYM, in placing Consumer's debt with Caliber and the Nadel Defendants, caused the Nadel Defendants to send communications to both the Consumer and the Maryland court, and caused Caliber to send the Affidavit of Debt, falsely communicating (or alternatively, failing to communicate) *the name of the creditor to whom the debt is owed* relating to Consumer's debt, all in violation of the FDCPA, specifically §§ 1692c and 1692e.

64.     An entity that is itself a "debt collector"—and hence subject to the FDCPA— should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf. In light of the principal-agent relationship between debt collector BNYM and the other Defendants, and between Caliber and the Nadel Defendants, BNYM and Caliber may be held vicariously liable for FDCPA violations whether or not BNYM or Caliber exercised direct control over them.

### Defendant debt collectors are not authorized to bring legal actions

65.     Each of the Defendants was without the prior consent of the consumer given directly to them, and without the express permission of a court of competent jurisdiction, and it was not reasonably necessary to effectuate a postjudgment judicial remedy, to communicate as they did, in connection with the collection of any debt, with persons other than a consumer, her

attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

66.     Well-established principles of statutory interpretation require statutes to be construed in a manner that gives effect to all of their provisions. See United States ex rel. Eisenstein v. New York, 129 S. Ct. 2230, 2234 (2009). "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Hibbs v. Winn, 542 U.S. 88, 101, 124 S. Ct. 2276 (2004) (citation omitted). Section 1692i, Legal actions by debt collectors, subsection (b) provides, "Nothing in this title shall be construed to authorize the bringing of legal actions by debt collectors." To give effect to this statutory provision, it is inferred from § 1692i(b) that each Defendant, as a "debt collector," is *specifically* not authorized to bring legal actions such as its foreclosure against ***Consumer***.

67.     In its Brief Of The Consumer Financial Protection Bureau As Amicus Curiae In Support Of Plaintiff-Appellant's Petition For Rehearing En Banc Or Rehearing By The Panel, Marx v. General Revenue Corporation,[7] No. 10-1363, 10th Cir., dated January 26, 2012, (the "Marx Brief") the CFPB advised as follows:

> The Act's structure reflects Congress's judgment that debt collectors' interests generally outweigh the risks to consumers only when collectors need to determine "the whereabouts of missing debtors." Id. In particular, with few exceptions, the Act allows debt collectors to communicate with third parties only to ascertain "location information"—the consumer's home address, phone number, or place of employment. 15 U.S.C. §§ 1692a(7), 1692b, 1692c(b).
> * * *
> Specifically, *any transmission* of information regarding a debt qualifies as a "communication."

---

[7] The CFPB specifically argued that, "The panel's erroneous interpretation of the FDCPA's prohibition on communicating with third parties erodes an important consumer protection, disregards the Act's text and structure, and disturbs accepted understandings of the Act." The Brief is **publicly** available at http://www.consumerfinance.gov/f/201202_cfpb_amicus-brief_marx-v-grc.pdf and must be considered. The Bureau could not participate in the earlier briefing because it did not assume its powers until July 21, 2011, after briefing concluded. Rehearing was denied. The U.S. Supreme Court, in Case No. 11–1175, decided February 26, 2013, (Justices Sotomayor and Kagan dissenting) ultimately ruled against Marx and the United States on other grounds.

\* \* \*

Most information held by debt collectors constitutes "information regarding a debt"—e.g., the debtor's name, account number, and creditor. The collector would not have the information, or be able to transmit it to anyone, but for the debt. That information remains "information regarding a debt" when the collector transmits it to a third party, regardless of how the recipient interprets it.

\* \* \*

Here, the statutory structure discussed above shows that the definition of "communication" [in § 1692a(2)] is not meant to limit the ordinary meaning of "communicate" in §1692c(b). Without that qualification, § 1692c(b) is properly interpreted as an absolute prohibition on third-party contacts, subject to narrow exceptions.

Marx Brief, pp. 10, 13–16 of 35 (emphasis and bracketed material added).

68. Defendants' communications with the Maryland court are prohibited "third party *contacts.*" To give effect to § 1692c(b), as interpreted by the Consumer Financial Protection Bureau ("CFPB"), it must be inferred that Defendants communicating with the Maryland court and the public through the Assignment, and the Maryland court by the foreclosure filings is "absolute[ly] prohibit[ed]." Those contacts were *in connection with collection of the debt* because (a) they transmitted "information regarding a debt"—e.g., Consumer's name, BNYM's name, caption and case numbers and other information about the nature of the debt and foreclosure—when the collector transmitted it to a third party, regardless of how the recipient interprets it and (b) the collector would not have the information, or be able to transmit it to anyone, but for the debt.

69. There are no statutes or rules of court without exception that comport with the requirements under the FDCPA and that expressly permitted or required these particular debt collector Defendants to contact the Maryland court, such that this Court might conclude as a matter of law that the Defendants had "the express permission of a court of competent jurisdiction." The creditor must bring the legal action. Section 1692i(b) negates any permission implied by the rules of court.

21

70.     The Maryland foreclosure proceedings have no preclusive effect on Consumer's federal claim herein—which has never been adjudicated in any court—and which is an independent cause of action. The FDCPA preempts state law to the extent state law affords a consumer less protection than the FDCPA does. 15 U.S.C. § 1692n; Const., Art XI, Clause 2.

## COUNT 1 – DEFENDANTS' VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

71.     Consumer incorporates the foregoing paragraphs as though the same were set forth at length herein.

72.     **Nadel Defendants violated 15 U.S.C. § 1692c(b)** by sending communications in connection with the collection of the debt to the Maryland court clerk (a person that is not a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector) without the prior consent given directly to the Nadel Defendants or the express permission of a court of competent jurisdiction, nor as reasonably necessary to effectuate a postjudgment judicial remedy without a creditor.

73.     **The four Substitute Trustees violated 15 U.S.C. § 1692c(b)** in conjunction with § 1692i(b) by bringing, through the Nadel Defendants, the foreclosure legal action to the Maryland court (a person that is not a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector) without the prior consent given directly to the Substitute Trustees or the express permission of a court of competent jurisdiction, nor as reasonably necessary to effectuate a postjudgment judicial remedy without a creditor.

74.     **Caliber violated 15 U.S.C. § 1692c(a) and (b)** by communicating, in connection with the collection of the debt, the Assignment, and the Affidavit of Debt and other affidavits through the Nadel Defendants, to the Maryland court (a person that is not a consumer, his

attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector) without the prior consent given directly to Caliber (or any other Defendants) or the express permission of a court of competent jurisdiction, nor as reasonably necessary to effectuate a postjudgment judicial remedy without a creditor; Caliber knew or should have known that Consumer's receiving the Assignment in the Land Records, is an inconvenient place for Consumer to receive such communication.

75.     **Caliber violated 15 U.S.C. § 1692e(11)** where the Assignment failed to disclose that the debt collector is attempting to collect a debt as is required for the initial written communication, and failed to disclose that the communication is from a debt collector as is required of each subsequent communication.

76.     **The Nadel Firm violated 15 U.S.C. § 1692g(b)** regarding its initial communication Consumer disputed the debt timely but the Nadel Firm did not validate the debt or obtain and mail verification, and then *subsequently* failed to cease debt collection activities; instead, the Nedal Defendants filed a foreclosure.

77.     **All Defendants violated 15 U.S.C. § 1692e**. This is Defendants' overarching violation. This suit is about debt collection without a creditor. Congress unambiguously requires BNYM be "the creditor to whom the debt is owed" in communications as well as in this Court in order for Defendants to even send Ms. Marino an initial communication in compliance with 15 U.S.C. §§ 1692g(a)(2) and 1692e. In pursuing collection of the debt—the Defendants in communications with the Maryland court while attempting to evade the Consumer's right to the name of the creditor to whom the debt is owed, each Defendant violated 15 U.S.C. § 1692e— particularly but not exclusively § 1692e(10)—which imposes strict liability on debt collectors who "use any false, deceptive, or misleading representation or means in connection with the

collection of any debt." All their communications, whether monthly statements generated by Caliber, whether an initial or subsequent ones, when viewed through the eyes of a least sophisticated consumer, are misleading representations and deceptive means in connection with collection of a debt. The Nedal Firm did not validate or provide the information to which Consumer was entitled, including the name of the creditor to whom the debt is owed, and then *subsequently* failed under § 1692g(b) to cease debt collection activities; instead, the Nedal Defendants filed a foreclosure. A claim arising under 15 U.S.C. § 1692g(a)(2) by alleging that Defendants failed to identify Consumers' current creditors, Consumers' allegations are also sufficient to state a claim against Defendants arising under 15 U.S.C. § 1692e. See Datiz, 2016 WL 4148330, at *12; Lee, 926 F.Supp.2d at 486-88; see also Foti v. NCO Fin. Sys., Inc., 424 F.Supp.2d 643, 666-67 (S.D.N.Y. 2006) ("The standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g."). Although Defendant argues that "the alleged act must, at a minimum, involve a misrepresentation that is material, " see Def.'s Mem. at 18-19, in Lee, the court held that, "even assuming, arguendo, that a deceptive statement must be material to violate Section 1692e, . . . failing to identify the creditor . . . was not immaterial as a matter of law." 926 F.Supp.2d at 488; see also Fritz v. Resurgent Capital Servs., LP, 955 F.Supp.2d 163, 170 (E.D.N.Y. 2013) ("[A] false representation of the owner of a debt could easily mislead the least sophisticated consumer as to the nature and legal status of the debt."). Based on requirement in § 1692g(a)(2) as to the communications of BNYM and Caliber, Consumer had the right to expect that BNYM was the creditor to whom the debt was owed and for whom all of the Defendants were collecting. Consumer had the right to expect the Substitute Trustees would not bring a legal action via their third-party contacts, §§ 1692i(b), 1692c(b). The

Nadel Defendants' communications when viewed together with Caliber's communications, are false, misleading, and deceptive means in violation of § 1692e.

78.     Therefore, none of the Defendants' violative acts or omissions resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, or was in good faith in conformity with any advisory opinion of the Consumer Financial Protection Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason, 15 U.S.C. §§ 1692k(c), (e).

## CLAIM FOR DAMAGES

79.     Since the Nadel Firm failed to cease collection activity absent validation and verification required by § 1692g(b) by (1) sending the March 19, 2017 letter that fails to name the creditor to whom the debt is owed, and (2) filing the foreclosure in the Maryland court, Consumer has experienced embarrassment, loss of reputation, anxiety, mental anguish, and loss of sleep worrying about what will happen to her, her personal information, and her place of abode being publicly sold because the Substitute Trustees are debt collectors themselves, all in the absence of "the name of the creditor to whom the debt is owed." Consumer therefore claims $300,000.00 actual damages, and $50,000.00 for Consumer's time and labor spent on prosecuting this private right of action and resisting foreclosure, plus $701,021.49 which is the amount of the debt Defendants assert is owed that can result in a deficiency judgment.

80.     One of the stated purposes of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses." Maryland law does not distinguish a creditor from a debt collector pursuing foreclosure against a consumer or non-consumer, and does not require a "creditor" as defined in the Act, and therefore offers less protection than would be consistent with federal law. There is no indication that Maryland has made any claim as to the

sufficiency of the foreclosure process to achieve the objectives of the FDCPA or requested and received an exemption under 15 U.S.C. § 1692o.

81. The FDCPA does not provide for any injunctive relief or interference with state courts, but instead makes debt collectors liable to consumers for statutory and actual damages as a "deterrent." Neither the Maryland rules of procedure or the Maryland court expressly required these particular Defendants to bring a legal action—which, according to §§ 1692i(b) and 1692c(b), should never have been brought in the first place. The federal court cannot enjoin the Defendants from doing what they are doing, but the court can enforce the FDCPA according to its terms and grant actual damages as a deterrent.

82. Therefore, Consumer claims actual damages in the amount of $701,021.49 from each Defendant under § 1692k(a)(1) sustained by Consumer as a result of Defendant's failure to comply with a provision of the FDCPA. Anything less than the amount that can result from the foreclosure sale and a deficiency judgment would not be a deterrent but would be profitable, against what Congress intended.

83. The effect of Defendants' illegal actions and mentioned above and omissions communicating with Consumer and third parties in connection with foreclosure, is a direct and proximate cause of, as well as a substantial factor in, Consumer's embarrassment, anxiety, loss of sleep, and representation of her unpaid debt and foreclosure of her interest in her place of abode in the public record, and that can result in a deficiency judgment, regardless of whether that representation is accurate in fact for which each of the Nadel Defendants and Caliber is directly liable, and Defendants BNYM and Caliber are each vicariously liable, to Consumer for $1,051,021.49 in assessed actual damages under § 1692k(a)(1), plus costs and fees under § 1692k(a)(3) in the event that Consumer retains Counsel admitted by the Court.

## DEMAND FOR JUDGMENT

WHEREFORE, pursuant to 15 U.S.C. § 1692k(a)(1), Consumer-Plaintiff demands judgment be entered in Consumer's favor for $1,051,021.49 against each of the Defendants.

Respectfully submitted,

Elsie Marino, Consumer-Plaintiff
12701 Darnestown Road
Gaithersburg, MD 20878
Ph: 301-820-1980
Emarino50@gmail.com

## VERIFICATION

I, Elsie Marino, having been first duly sworn, depose and state that I have read the foregoing Verified Complaint, and that the information stated therein as factual is true to my own personal knowledge, and those factual matters which are stated to be upon information and belief are believed to be true.

_Elsie Marino_
Elsie Marino

Sworn to and subscribed before me this 26th day of July, 2017.

_Lorraine Jacobs-Coles_
Notary Public

LORRAINE JACOBS-COLES
MONTGOMERY COUNTY
STATE OF MARYLAND
MY COMMISSION EXPIRES
JUNE 14, 2018