# NOTICE OF FORECLOSURE ACTION

[Owner-Occupied - Preliminary Loss Mitigation Affidavit]

This Notice is Required by Maryland Law (Real Property Article, §7-105.1, Annotated Code of Maryland).

**A foreclosure sale of this property may occur as soon as 68 days from this notice if you do not respond**

If you own and live in this home, you may qualify for alternatives to foreclosure, but you must act quickly.

**We have included**:

- **Preliminary Loss Mitigation Affidavit** – this is a legal document completed by your mortgage company (sometimes referred to as servicer) explaining that they have not completed an evaluation of your loan for possible alternatives to foreclosure and why.
- **Loss Mitigation Application** – this is the application that your mortgage company will review to see if you qualify for alternatives to foreclosure. If you need help completing this form, please contact a housing counselor (information below).
- **Addressed Envelope to mail the Loss Mitigation Application.**

YOU ARE NOT ALONE. THERE ARE FREE RESOURCES AVAILABLE IN MARYLAND.

## TO ACCESS FREE HOUSING COUNSELING SERVICES, CALL THE MARYLAND HOPE HOTLINE AT 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG

**What happens if you do nothing?**
In 28 days or more, you will receive a **Final Loss Mitigation Affidavit**, which will include a form to request **FORECLOSURE MEDIATION**.

- You qualify for foreclosure mediation only after the Final Loss Mitigation Affidavit has been filed with the court.
- You will have only 25 days to request foreclosure mediation after you receive the Final Loss Mitigation Affidavit so it is important that you continue to open your mail.

**Beware of anyone offering to "save" your home or requesting an upfront fee before providing assistance.** This is illegal in the State of Maryland. *If you believe you have been a victim of a scam, please contact Maryland's office of the Commissioner of Financial Regulation by calling* 410-230-6077 *or visiting* http://www.dllr.state.md.us/finance/.

***BEFORE YOU MAIL THE LOSS MITIGATION APPLICATION, MAKE A COPY FOR YOUR RECORDS***



**Exhibit F**



# LOSS MITIGATION APPLICATION

COMPLETE ALL PAGES OF THIS FORM

**See Instructions corresponding with numbers in brackets {} on form**

Loan Number: {1} ____________________

| BORROWER {3} | CO-BORROWER {4} |
|---|---|
| Borrower's Name | Co-Borrower's Name |
| Social Security No. Date of Birth | Social Security No. Date of Birth |
| Home phone number. with area code | Home phone number with area code |
| Cell or work number with area code | Cell or work number with area code |
| Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. | Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. |

{5} Mailing address:

Property address (if same as mailing address, just check same) ☐ same

{6}
**I want to:** ☐ Keep the Property ☐ Sell the Property

**The property is my:** ☐ Primary Residence ☐ Second Home ☐ Investment

**The property is:** ☐ Owner Occupied ☐ Renter Occupied ☐ Vacant

{7}
Is the property listed for sale? ☐ Yes ☐ No
Have you received an offer on the property? ☐ Yes ☐ No

Date of offer:__________ Amount of offer: $ __________

Agent's Name? ____________________

Agent's Phone Number: ____________________

For Sale by Owner? ☐ Yes ☐ No

{8}
Have you contacted a housing-counseling agency for help ☐ Yes ☐ No
If yes, please complete the following:
Counselor's Name: ____________________

Agency Name: ____________________

Counselor's Phone Number: ____________________

Counselor's E-mail: ____________________

{9}
Who pays the real estate tax bill on your property:

☐ I do ☐ Lender does ☐ Paid by condo or HOA

Are the taxes current? ☐ Yes ☐ No

Condominium or HOA fees ☐ Yes ☐ No $__________

Paid to: ____________________

{10}
Who pays the hazard insurance premium for your property?

☐ I do ☐ Lender does ☐ Paid by condo or HOA

Is the policy current? ☐ Yes ☐ No

Name of Insurance Co.: ____________________

Insurance Co. Tel #: ____________________

COMPLETE ALL PAGES OF THIS FORM

**See Instructions corresponding with numbers in brackets {} on form**

**{11} Bankruptcy**

Have you filed for bankruptcy? ☐ Yes ☐ No If yes: ☐ Chapter 7 ☐ Chapter 13 Filing Date: ______________

Has your bankruptcy been discharged? ☐ Yes ☐ No Bankruptcy case number: ______________

**{12} Additional Liens/Mortgages or Judgments on this property:**

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |

**{13} HARDSHIP AFFIDAVIT**

I am requesting review under your loss mitigation program.

I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

| | |
|---|---|
| ☐ My household income has been reduced. For example: unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower. | ☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt. |
| ☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | ☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |

☐ Other

COMPLETE ALL PAGES OF THIS FORM

**See Instructions corresponding with numbers in brackets {} on form**

{14} **Number of People in Household:**

| **Income**[1] | | **Assets** | | **Expenses** | |
|---|---|---|---|---|---|
| {15} Monthly Gross Wages | $ | {26}Checking Account(s) | $ | {37} First Mortgage Payment | $ |
| {16} Overtime | $ | {27} Checking Account(s) | $ | {38} Second Mortgage Payment | $ |
| {17} Child Support / Alimony / Separation [2] | $ | {28} Savings/ Money Market | $ | {39} Insurance | $ |
| {18} Social Security / SSDI | $ | {29} CDs | $ | {40} Property Taxes | $ |
| {19} Other monthly income from pensions, annuities or retirement plans | $ | {30}Stocks / Bonds | $ | {41} Credit Cards / Installment Loan(s) (total minimum payment per month) | $ |
| {20} Tips, commissions, bonus and Self-Employed Income | $ | {31} Other Cash on Hand | $ | {42} Alimony, child support payments | $ |
| {21} Rental Income | $ | {32} Other Real Estate (estimated value) | $ | {43} Net Rental Expenses | $ |
| {22} Unemployment income | $ | {33} Other: | $ | {44} HOA/Condo Fees / Property Maintenance | $ |
| {23} Food Stamps / Welfare | $ | {34} Other: | $ | {45} Car Payments | $ |
| | | | | {46} Food/Groceries | $ |
| | | | | {47} Utilities (Water/Electricity/Gas/ Trash) | $ |
| {24} Other | $ | {35} Other: | $ | {48} Other | $ |
| {25} Total (Gross Income) | $ | {36} Total Assets | $ | {49} Total Debt / Expenses | $ |

**ALL INCOME MUST BE DOCUMENTED**

[1] **Include combined monthly income and expenses from the borrower and co-borrower (if any).**

[2] **You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.**

**LOSS MITIGATION APPLICATION**

**ACKNOWLEDGMENT AND AGREEMENT**

*In making this request for consideration under your loss mitigation program, I certify under penalty of perjury:*

That all of the information in this document is truthful and the event(s) identified on page one is/are the reason that I need to request a modification of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

I understand that the Servicer, ______________________________ , or its agents may investigate the accuracy of my statements and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate the law.

I understand that the Servicer will pull a current credit report on all borrowers obligated on the Note.

I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any loss mitigation agreement and may pursue foreclosure on my home.

That my Property is owner-occupied; I intend to reside in this property for the next twelve months; I have not received a condemnation notice; and there has been no change in the ownership of the Property since I signed the documents for the mortgage that I want to modify.

I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

I am willing to commit to housing counseling if it is determined that my financial hardship is related to excessive debt.

I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any loss mitigation agreement to any third party that needs this information to process this application, including but not limited to: any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate liens (if applicable) mortgage loan(s); any companies that perform support services in conjunction with my mortgage; any HUD-certified housing counselor; and government regulators.

{50} ______________________________ ______________

Borrower Signature — Date

______________________________ ______________

Co-Borrower Signature — Date

**Instructions for Completing the Loss Mitigation Application**

**The numbers for each item below correspond to the same numbers in the form above.**

{1} Your loan number on your mortgage loan statement.
{2} Your loan ''Servicer'' is the financial institution that collects your monthly payment.
{3} The borrower section must include information on the person whose name is on the ''Note'' for the mortgage loan.
{4} The co-borrower is a second person on the Note for the mortgage loan. Do not fill out this section for someone who is not obligated on the Note for the mortgage loan.
{5} Please provide a mailing address and a residential ''Property'' address if different. The Property address should correspond to the mortgage for which you are submitting a Loss Mitigation Application.
{6} For this section you should choose one option for each question.
{7} If your Property is not listed for sale, you do not need to fill out the rest of Section 7. Only include offers for sale that you received in the past year.
{8} HUD-approved counselors are available free of charge and can be located on the HUD website at www.HUD.gov.
{9} If your real estate taxes and property insurance are part of the monthly payment that you make to your servicer, select ''lender does.'' ''HOA'' means Homeowner's Association.
{10} If your hazard insurance premium is part of the monthly payment that you make to your servicer, select ''lender does.'' ''HOA'' means Homeowner's Association.
{11} The filing date indicates when you officially filed for bankruptcy. Only check the ''yes'' box for a discharged bankruptcy if you received a discharge from bankruptcy.
{12} Additional liens include second (or third) mortgages and home equity lines of credit.
{13} Please select as many hardships as apply to your situation. You can use the extra lines to explain your hardship.
{14} Indicate the number of people in your household who contribute to the total income.
{15} Monthly gross wages are what you receive before taxes. Use your most current pay stub to find this amount.
{16} This amount should be listed on a current pay stub.
{17} If you receive child support, alimony, or separation maintenance income, you are not required to report it.
{18} SSDI means Social Security/Disability Income.
{19} Only include if you are retired and collecting income from retired funds.
{20} Self-Employed or commission borrowers (1099) must provide a copy of the most recently filed Federal tax return with all schedules and the most recent quarterly or year-to-date profit/loss statement. You must also provide a copy of three (3) months recent and consecutive business bank statements, or personal bank statements if no business account exists. If organized as a corporation or partnership, you must provide the most recently filed corporate or partnership returns with all schedules.
{21} Only include rental income if used as part of your overall income. Include most recent tax return or current lease agreement or two cleared rent check copies.
{22} You must have at least nine months of unemployment income to report on this form.
{23} Report the amount indicated on your benefits letter. A copy of your award letter must be provided.
{24} Add all other income and report sum in this box.
{25} Add all amounts in income column (boxes 15-24) and report sum.
{26} - {28} Report amounts for all accounts, if applicable.
{29} ''CDs'' means certificates of deposit.
{30} - {31} Report amounts for all accounts, If applicable.
{32} Include estimated value for all other properties owned.
{33}-{35} Report any other assets other than the value of life insurance or retirement plans, such as 401K, pension funds, IRAs
{36} Add all amounts in assets column (boxes 37-45) and report sum.
{37} This amount can be found on your statement for your first mortgage.
{38} If applicable, this amount can be found on the statement for your second mortgage or home equity lines of credit.
{39} This refers only to homeowner's insurance and should be reported only if you pay this yourself.
{40} Only report these taxes if you pay them yourself.
{41} Add all credit cards and installment payments and report sum here.
{42} If you are responsible for paying child support or alimony, you must report the amount here.
{43} Report amount if your total rental income does not cover your total rental expenses.
{44} ''HOA'' means Homeowner's Association.
{45} Include car payments only if you are the owner of the vehicle.
{46} Include all household food expenses.
{47} Include all expenses for utilities (water, gas, electricity, trash).
{48} Include any other pertinent household expenses.
{49} Add all amounts in expense column (boxes 26-35) and report sum.
{50} Please be sure to read the entire Loss Mitigation Application Acknowledgement and Agreement before signing.






**USE AS INCOME VERIFICATION FOR CALIBER LOAN # ____________**

**BORROWER NAME: ____________________**

# LETTER OF VERIFICATION: CONTRIBUTION TO HOUSEHOLD INCOME

Date ____________

To: Caliber Home Loans:

**This letter is written to state that I, ____________________, contribute monthly household income in the amount of $ ____________ per month. My relationship to your current borrower is ____________________. I have attached 2 months of my most recent income documentation to verify the source of the income. I state that this information provided is correct and to the best of my knowledge.**

**Respectfully,**

____________________________

Signature Required

**LET US GUIDE YOU HOME**






# NON-BORROWER CONTRIBUTOR CREDIT REPORT AUTHORIZATION

**Caliber Account Number: #** ______________________________

**Borrower Name(s) (please print):** ______________________________

**Each of the undersigned hereby acknowledges that Caliber Home Loans, Inc., as servicer for the owner of the above-referenced mortgage loan, has permission to verify and to obtain any credit information or data, for any legitimate business purpose through any source, including a consumer reporting agency. (Non-borrower contributor(s) authorizing Caliber to pull their credit report must sign, date and provide their social security number below)**

X ______________________________ ______________
Non-borrower Contributors Signature Date

______________________________
Printed Name

______________________________
Social Security #

X ______________________________ ______________
Non-borrower Contributors Signature Date

______________________________
Printed Name

______________________________
Social Security #

**LET US GUIDE YOU HOME**

## Loss Mitigation Options and Eligibility Requirements

As your mortgage loan servicer, we understand that you may be experiencing financial difficulty with making your mortgage payments and would like to discuss your options to make your mortgage payment affordable and avoid foreclosure. We will determine if you qualify based on your financial situation. To conduct this evaluation, we need you to submit the attached Loss Mitigation Application, and documentary evidence of all income.

Please see the workout options and eligibility requirements below for the loan that is the subject of this Notice or filing.

Options For Keeping Your Home

- Repayment Plan - A temporary agreement which allows for repayment of the unpaid past-due debt along with continued regular mortgage payments. The unpaid past due debt may include principal, interest, fees, and/ or costs incurred by the lender.

  Eligibility Requirements for this option require a portion of the unpaid past due debt as a down payment, with the remainder of the unpaid debt being spread out over a period of months. You will make the additional payment along with your regular monthly mortgage payment. In order to qualify for this option, you must be able to make the required payments as outlined in the plan.

- Loan Reinstatement - If you have the financial ability to bring your loan current, your lender/servicer will accept the funds needed to bring the loan current until the day of your foreclosure sale. In addition to the monthly mortgage payment, late charges and other amounts due on your loan obligation you may be required to pay all outstanding attorney's fees and costs of collection.

- Loan Modification - A loan modification allows you the option to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan.

  Eligibility Requirements for a loan modification are determined by your ability to pay (which may require a down payment), the current value of the home, and the hardship suffered.

- Forbearance - An agreement whereby the lender may accept less than the total monthly payment or agree not to proceed with foreclosure and/or collection of payments, for a period of time, to allow you the time to re-establish the ability to make the required payments.

  Eligibility Requirements for this option are determined on your current ability to pay and the nature of the hardship experienced.

Options For You If You Do Not Wish And/Or May Not Be Able To Afford To Keep The Property

- Deed-In-Lieu - An option that allows you to voluntarily deed your property to the owner of your mortgage in order to avoid foreclosure. In return, you agree to vacate the property on an agreed upon date leaving the property in "broom swept" condition. You must allow the lender/servicer access to inspect your property (which may include the interior of the home) should such request be made.

  Eligibility Requirements include your inability to pay the debt. Your lender may ask you to complete a financial questionnaire (which may require a hardship letter). Also there can be no other liens or judgments against the property other than your mortgage obligation that is currently in default. In other words, title must be "clear and marketable". In some circumstances your lender may want you to prove that your taxes, insurance, and utilities are current.

- Short Sale - This option allows you to avoid foreclosure by selling your property for less than the total amount owed on the account (subject to agreement by your servicer/lender), resulting in the release of the servicer/lender's lien on your home.

  In order to be eligible you must no longer be able to maintain the mortgage payments, and you must demonstrate that the current property value is below your current indebtedness. The lender may ask you to complete a financial questionnaire (which may require a hardship letter) in order to evaluate your ability to pay the debt. The property must have been listed with a real estate agent. You must also have a buyer willing to purchase the property for the current fair market value. You must provide a Real Estate Purchase Agreement (with no contingencies), Estimated Settlement Statement and Listing Agreement to the servicer for review. If requested, you must allow the lender/servicer access to appraise/value your property.

- Temporary Suspension of Payments - This option allows you to stop making payments on the loan to allow the sale of property. The sale should completely payoff your loan.

  Eligibility Requirements are that the property has enough value so that the sale of the property will pay off the full amount of the loan (which may include any fees and/ or costs incurred by your lender). You must have the property listed with a real estate agent. Also the lender must agree not to proceed with foreclosure for an agreed upon period to allow borrower time to sell the property. Usually, the amount of time allowed will be based upon the value of the property, the likelihood of obtaining a sufficient price, and any other financial circumstances that may be relevant.

You must take the first step by contacting us, at (800) 621-1437 from Mon - Thurs 8:00 am to 9:00 pm CST, Fri 8:00 am to 7:00 pm, Sat 8:00 am to 4:00 pm. You may also write to us at 13801 Wireless Way Oklahoma City, OK 73134. Be sure to include your name and loan number in your correspondence.

Please be advised that this letter does not constitute a commitment to approve any workout plan.

*APPENDIX D* **(Page 1 of 1)**

# PRELIMINARY LOSS MITIGATION AFFIDAVIT

**Case Number:** 433888V
**Date of Filing With Court:** 06/27/2017
**Borrower(s): Elsie Marino and Luis Javier Marino**
**Property Address: 12701 Darnestown Road, Gaithersburg, MD 20878**

My name is Abraham Gaytan. I am authorized to act on behalf of the secured party who is the holder of the beneficial interest in the mortgage or deed of trust which is secured by property at the address listed above. The information in this affidavit is derived from records of the secured party that were made at or near the time of the occurrence of the matters set forth below by, or from information transmitted by, a person with knowledge of those matters. These records were produced and/or maintained in the course of the regularly conducted activity of the secured party as a regular practice of the secured party, and I state the following:

The mortgage loan that is the subject of this foreclosure action may be eligible for loss mitigation and [check all statements that apply]:

☐ The loan is currently under loss mitigation analysis, but the analysis has not yet been completed.

☐ The secured party or a representative of the secured party has not been able to obtain all documentation and information necessary to conduct the loss mitigation analysis.

Required additional documentation to complete loss mitigation analysis [list documents required]:

________________________________________

________________________________________

________________________________________

☒ The secured party or a representative of the secured party has not been able to establish communication with the borrower.

☐ Other ________________________________.

I solemnly affirm under the penalties of perjury and upon personal knowledge based on review of the records described herein or attached hereto that the contents of this affidavit are true.

**The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, by Caliber Home Loans, Inc., f/k/a Vericrest Financial, Inc., as its attorney in fact**

____________________ 6/8/17
Signature of Affiant Date

Abraham Gaytan, Authorized Signatory
Print Name and Title of Affiant

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000

FILE NUMBER: 18045

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

Jeffrey Nadel
Scott Nadel
Daniel Menchel
Michael McKeown
4041 Powder Mill Road, Suite 415
Calverton, MD 20705

Substitute Trustees
Plaintiff

Elsie Marino
Luis Javier Marino
12701 Darnestown Road
Gaithersburg, MD 20878

Defendant(s)

Civil No. 433888V

## ORDER TO DOCKET SUIT

Dear Clerk:

Please docket the above action in foreclosure pursuant to Maryland Rule 14-204 and accept for filing the Order to Docket, copy of the Deed of Appointment of Substitute Trustee, Statement of Debt, Non Military Affidavit, certified copy of the Deed of Trust, copy of the Note together with Trustee's Certification of Note, Affidavit Certifying Ownership of Debt Instrument, copy of Notice of Intent to Foreclose, Affidavit(s) of Default and Notice of Intent to Foreclose, and Affidavit in Compliance with Maryland Real Property Article, Section 7-105.1 (d)(2)(viii).

**The real property subject to this matter is Residential Property and it is unknown owner occupied at this time.**

**A Final Loss Mitigation Affidavit is attached. In addition two actual envelopes, one addressed to the foreclosing attorney and the second addressed to the Clerk of the Court as required under R.P. §7-105.1 is appended hereto, which additional actual envelopes will also be sent to parties required to receive such envelopes under the said statute.**

**STATEMENT: THE PARTIES HAVE NOT ELECTED TO PARTICIPATE IN PREFILE MEDIATION.**

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000
FILE NUMBER: 18045

Respectfully Submitted,

LAW OFFICES OF JEFFREY NADEL

By: ______________________________

Jeffrey Nadel
Scott E. Nadel
Attorney for Substitute Trustee
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705
240-473-5000

Name of Mortgage Lender (if applicable): Wilmington Finance, Inc.
Maryland Mortgage Lender License Number: NA
Name of Mortgage Originator (if applicable): NA
Maryland Mortgage Originator License Number: NA

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000
FILE NUMBER: 18045

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

Jeffrey Nadel
Scott Nadel
Daniel Menchel
Michael McKeown
4041 Powder Mill Road, Suite 415
Calverton, MD 20705

Civil No.

Substitute Trustees
Plaintiff

Elsie Marino
Luis Javier Marino
12701 Darnestown Road
Gaithersburg, MD 20878

Defendant(s)

**AFFIDAVIT OF DEBT**

The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1 by Caliber Home Loans, Inc., hereby certifies that the Plaintiff has the right to foreclose and the basis for such assertion is the secured party's ownership/holding of the Note and/or Deed of Trust and that the amount of the indebtedness owed under the Deed of Trust recorded in Liber 32623, Folio 635 as filed in these proceedings is as follows:

| | |
|---|---|
| Principal Balance | $636,622.91 |
| Interest @3.00% From 08/01/2016 to 06/01/2017 | $15,915.60 |
| Interest @3.00% From 06/01/2017 to 06/30/2017 | $1,517.43 |
| Escrow Balance | $6,306.06 |
| Defer Mod Int | $33,954.42 |
| Defer Paid Exp | $1,010.92 |
| Defer Fees | $216.00 |
| Defer Late Charge | $3,645.03 |
| FCL Title Fees | $350.00 |
| VAL Brokers Price Opinion | $118.50 |
| Late Charge | $1,364.62 |
| Total | $701,021.49 |

Per Diem: $52.33

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000
FILE NUMBER: 18045

I solemnly affirm under the penalties of perjury that the contents of the aforegoing are true and correct to the best of my knowledge, information and belief.

The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, by Caliber Home Loans, Inc., f/k/a Vericrest Financial, Inc., as its attorney in fact

By: ______________

Name: Naomi Feistel

Title: AUTHORIZED OFFICER

Address: 16745 W BERNARDO DR # 300,

SAN DIEGO, CA 92127

Telephone Number: 858-649-5717

Date: 6/9/2017

Caliber/Marino

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000

FILE NUMBER: 18045

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| Jeffrey Nadel<br>Scott Nadel<br>Daniel Menchel<br>Michael McKeown<br>4041 Powder Mill Road, Suite 415<br>Calverton, MD 20705<br><br>Substitute Trustees<br>Plaintiff<br><br>Elsie Marino<br>Luis Javier Marino<br>12701 Darnestown Road<br>Gaithersburg, MD 20878<br><br>Defendant(s) | Civil No. |

**AFFIDAVIT IN COMPLIANCE WITH § 521 OF THE SERVICE MEMBERS CIVIL RELIEF ACT 50 U.S.C. APP. § 501 ET SEQ.**

I hereby certify, as noteholder or servicer for the noteholder as stated below, pursuant to §521 of the Service Members Civil Relief Act , 50 U.S.C. App. § 501 et seq. that:

1. Said defendant(s) is/are not presently in the active military service of the United States;

2. Said defendant(s) has/have not been ordered to report for induction under the Selective Training and Service Act of 1940 as amended;

3. Said defendant(s) is/are not a member(s) of the enlisted reserve corps who have been ordered to report for military service.

4. Said defendant(s) is/are not entitled to immunity from foreclosure under the provisions of the Soldiers and Sailor's Relief Act of 1940 as amended by the Service Members Civil Relief Act.

Your affiant further asserts that the foreclosing party has the right to foreclose and the basis for such assertion is the secured party's ownership/holding of the Note and/or Deed of Trust.

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000

FILE NUMBER: 18045

I do solemnly declare and affirm under the penalties of perjury, that the foregoing facts are true and correct to the best of my knowledge, information and belief.

The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, by Caliber Home Loans, Inc., f/k/a Vericrest Financial, Inc., as its attorney in fact

By: ____________________

Name: **Naomi Feistel**

Title: **Authorized Signatory**

Address: 16745 W BERNARDO DR # 300, SAN DIEGO, CA 92127

Telephone Number: 858-649-5717

Date: 6/6/2017

Caliber/Marino

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000

FILE NUMBER: 18045

Department of Defense Manpower Data Center

Results as of : Jun-05-2017 09:17:02 AM

SCRA 3.0



Status Report
Pursuant to Servicemembers Civil Relief Act

Birth Date:
Last Name: MARINO
First Name: LUIS
Middle Name: JAVIER
Active Duty Status As Of: Jun-05-2017

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : Jun-05-2017 09:19:23 AM

SCRA 3.0



Status Report
Pursuant to Servicemembers Civil Relief Act

Birth Date:

Last Name: MARINO

First Name: ELSIE

Middle Name:

Active Duty Status As Of: Jun-05-2017

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento

Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

Jeffrey Nadel
Scott Nadel
Daniel Menchel
Michael McKeown
4041 Powder Mill Road, Suite 415
Calverton, MD 20705

Substitute Trustees
Plaintiff

Civil No

Elsie Marino
Luis Javier Marino
12701 Darnestown Road
Gaithersburg, MD 20878

Defendant(s)

**SUBSTITUTE TRUSTEE'S AFFIDAVIT AND CERTIFICATION OF NOTE, DEED OF TRUST, DEED OF APPOINTMENT AND AS TO RESIDENTIAL PROPERTY**

The undersigned Substitute Trustee hereby certifies:

1) That the attached copy of the Note is a true and accurate copy of same as delivered to the undersigned by the note holder and/or its servicing agent, and

2) That the attached and within copy of the subject lien instrument is a true and accurate copy, which is duly recorded in the land records of this County, and

3) That the attached Deed of Appointment or Deed of Removal and Appointment of Successor Trustees is a true and accurate copy of the original which has previously or simultaneously herewith been sent to the land records for recording, and

4) That the Real Property involved in this matter is Residential Property.

I do solemnly declare and affirm under the penalties of perjury, that the foregoing facts are true and correct to the best of my knowledge, information and belief.

~~Jeffrey Nadel~~
Scott Nadel
Substitute Trustees
4041 Powder Mill Road, Suite 415
Calverton, MD 20705
240-473-5000

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000

FILE NUMBER: 18045

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0635, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 635

Return To:
Wilmington Finance, Inc.
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462

2006 JUL -6 A 8 43
FILED
MOLLY Q. RUHL
CLERK'S OFFICE
MONTGOMERY CO. MD

Prepared By:
Wilmington Finance, Inc.
401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462

Tax ID#: 06 00392781 [Space Above This Line For Recording Data] 06-0248

Refinance

# DEED OF TRUST

IMP FD SURE 20.00
RECORDING FEE 20.00
TOTAL 40.00
Res# M005 Rcpt # 08582
MQR BOH Blk # 1013
Jul 06, 2006 08:43 am

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated June 5, 2006, together with all Riders to this document.

**(B) "Borrower"** is
LUIS JAVIER MARINO AND ELSIE MARINO, AS TENANTS BY THE ENTIRETY, UNTO THE SURVIVOR OF THEM

MONTGOMERY COUNTY, MD
APPROVED BY UM
JUN 23 2006
$672.75 RECORDATION TAX PAID
$ N/A TRANSFER TAX PAID

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
Wilmington Finance, Inc.
Lender is a Corporation
organized and existing under the laws of Delaware





MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0636, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 636

Lender's address is 401 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462

**(D) "Trustee"** is
METROPOLITAN TITLE AND SETTLEMENT, LLC

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated June 5, 2006. The Note states that Borrower owes Lender Six Hundred Ninety-Three Thousand and 00/100 Dollars (U.S. $693,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2036.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: GM JM

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0637, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 637

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County [Type of Recording Jurisdiction] of MONTGOMERY [Name of Recording Jurisdiction] :

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:00393781 which currently has the address of
12701 DARNESTOWN ROAD [Street]
GAITHERSBURG [City], Maryland 20878 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0638, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Initials: EM JM

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0639, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0640, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 640

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.



MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0641, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: GM JM

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0642, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: EM JM

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0643, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: EM JM

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0644, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: 

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0645, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.

Initials:


MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0646, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 646

If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products). Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.**

Initials:


MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0647, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



**The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

Initials:


MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0648, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 648

STATE OF MARYLAND, MONTGOMERY County ss:

I Hereby Certify, That on this 5 day of Jun 2006, before me, the subscriber, a Notary Public of the State of Maryland, in and for the County of Montgomery, personally appeared

Luis Javier Marino

Elsie Marino

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission Expires: 9/12/09

Notary Public

STATE OF Maryland, Montgomery County ss:

I Hereby Certify, That on this 5 day of Jun 2006, before me, the subscriber, a Notary Public of the State of Maryland and for the County of Montgomery, personally appeared Gregory E. Flynn,

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

My Commission Expires: 9/12/09

Notary Public

This is to certify that the within instrument was prepared Wilmington Finance, Inc.,

Greg Flynn
Notary
Closer

Initials: 

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0649, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 649

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________ _______________ (Seal) -Borrower

LUIS JAVIER MARINO

_______________ _______________ (Seal) -Borrower

ELSIE MARINO

_______________ (Seal) -Borrower _______________ (Seal) -Borrower

_______________ (Seal) -Borrower _______________ (Seal) -Borrower

_______________ (Seal) -Borrower _______________ (Seal) -Borrower

# Exhibit A

Lot numbered Two (2), in a subdivision known as "HALLMAN'S ADDITION TO QUINCE ORCHARD", as per plat recorded in Plat Book 80 at Plat 8242, among the Land Records of Montgomery County, Maryland.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0650, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0651, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 651

# ADJUSTABLE RATE RIDER

**(LIBOR Index - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 5th day of June, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Wilmington Finance, Inc.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

12701 DARNESTOWN ROAD
GAITHERSBURG, MD 20878

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 6.300 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of June, 2008 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0652, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.



**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Four and 300/1000 percentage points ( 4.300 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.300 % or less than 6.300 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.300%, or less than 6.300 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

32623 653

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0653, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Initials: ____



MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0654, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 654

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

(Seal) -Borrower
Luis Javier Marino

(Seal) -Borrower
Elsie Marino

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) MQR 32623, p. 0655, MSA_CE63_32580. Date available 07/12/2006. Printed 06/05/2017.

32623 655

**AFFIDAVIT MADE PURSUANT TO SECTION 12-108(G)(3) OF THE TAX-PROPERTY ARTICLE OF THE ANNOTATED CODE OF MARYLAND**

**THE** undersigned make this oath, in due form of law and under the penalties of perjury, that the following is true to the best of our knowledge, information and belief, in accordance with Section 12-108(g)(3) of the Tax-Property Article of the Annotated Code of Maryland, as follows:

1. That we are the original mortgagors of the Deed of Trust recorded in the Land Records of the County of Montgomery, State of Maryland, in Liber 31040, Folio 357.
2. That the mortgaged property is our principal residence.
3. That the amount of unpaid principal of the original Deed of Trust being refinanced is **$595,755.47**.

**DATED** this **5th** day of **June**, **2006**.

[signature]
**Luis Javier Marino**

Elsie Marino
**Elsie Marino**

State of Maryland, County of Montgomery

I HEREBY CERTIFY THAT on this 5th day of June, 2006, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared **Luis Javier Marino and Elsie Marino**, known to me (or satisfactorily proven) to be the persons described in the foregoing instrument and made oath in due form of law, and under the penalties of perjury, that the matters and facts set forth herein are true.

As witness, my hand and notarial seal.

[signature]
NOTARY PUBLIC
My Commission Expires: 9/12/09

Recording Requested By:
CALIBER HOME LOANS, INC.

And When Recorded Mail To:
Caliber Home Loans, Inc.
13801 Wireless Way
Oklahoma City, Ok 73134

Customer#: 1/1

Space above for Recorder's use

# ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS, PO BOX 2026, FLINT, MI, 48501-2026, hereby assign and transfer to THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1, 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-0000, all its right, title and interest in and to said Mortgage in the amount of $693,000.00, recorded in the State of MARYLAND, County of MONTGOMERY Official Records, dated JUNE 05, 2006 and recorded on JULY 06, 2006, as Instrument No. ---, in LIBER: 32623, at FOLIO: 635.
Executed by: LUIS JAVIER MARINO AND ELSIE MARINO, AS TENANTS BY THE ENTIRETY, UNTO THE SURVIVOR OF THEM (Original Mortgagor).
Original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS. Legal Description: LOT NUMBERED TWO (2), IN A SUBDIVISION KNOWN AS "HALLMAN'S ADDITION TO QUINCE ORCHARD", AS PER PLAT RECORDED IN PLAT BOOK 80 AT PLAT 8242, AMONG THE LAND RECORDS OF MONTGOMERY COUNTY, MARYLAND.. Property Address: 12701 DARNESTOWN ROAD, GAITHERSBURG, MD 20878-0000. KEY TAX# 00393781.

Date: APRIL 07, 2017
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), AS NOMINEE FOR WILMINGTON FINANCE, INC., ITS SUCCESSORS AND ASSIGNS

By: ______________________
Roy Lacey, Assistant Secretary

State of OKLAHOMA }
County of OKLAHOMA } ss.

On APRIL 07, 2017 , before me, Nancy Ortiz, a Notary Public, personally appeared Roy Lacey , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

______________________
(Notary Name): Nancy Ortiz
My commission expires: 09/29/2020

NANCY ORTIZ NOTARY # 04008865 EXP. 09/29/20 PUBLIC STATE OF OKLAHOMA

Prepare By: J DIVYA SREE

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 54441, p. 0337, MSA_CE63_54398. Date available 06/19/2017. Printed 06/23/2017.

20
40
KW

**BOOK: 54441 PAGE: 338**

LR - Assignment
Recording Fee 20.00
Name: MARINO
Ref:
LR - Assignment
Surcharge 40.00

SubTotal: 60.00

Total: 60.00
06/14/2017 12:36
CC15-CP
#8559803 CC0602 -
Montgomery
County/CC06.02.06 -
Register 06

MONTGOMERY COUNTY CIRCUIT COURT (Land Records) BHM 54441, p. 0338, MSA_CE63_54398. Date available 06/19/2017. Printed 06/23/2017.




**DOCUMENT VALIDATION PAGE**
FOR CLERK'S USE ONLY
(EXCLUDED FROM PAGE COUNT FOR CERTIFIED COPY)

---

**BARBARA H. MEIKLEJOHN**
Clerk of the Circuit Court for Montgomery County
50 Maryland Avenue
Rockville, Maryland 20850
Recording and Licensing
(240) 777-9470

Certified True Copy

SEE 'INTEREST-ONLY ADDENDUM' ATTACHED HERETO AND MADE A PART HEREOF.
SEE 'PREPAYMENT RIDER TO NOTE' ATTACHED HERETO AND MADE A PART HEREOF.

# ADJUSTABLE RATE NOTE

(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| June 5, 2006 | ROCKVILLE | Maryland |
|---|---|---|
| [Date] | [City] | [State] |

12701 DARNESTOWN ROAD
GAITHERSBURG, MD 20878

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 693,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Wilmington Finance, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.300 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on July 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 209 Plymouth Meeting, PA 19462 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 3,638.25. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of June, 2008 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Four and 300/1000 percentage points ( 4.300 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.300 % or less than 6.300 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.300%, or less than 6.300%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.



Initials: 

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower**. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| [signature] (Seal) -Borrower<br>LUIS JAVIER MARINO | Elsie Marino (Seal) -Borrower<br>ELSIE MARINO |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) - Borrower | (Seal) -Borrower |

*[Sign Original Only]*

**ALLONGE TO NOTE**

| | |
|---|---|
| Allonge to note dated: | 6/5/2006 |
| In Favor of : | Wilmington Finance, Inc. |
| And executed by: | **LUIS JAVIER MARINO and ELSIE MARINO** |
| Property Address: | 12701 DARNESTOWN ROAD<br>GAITHERSBURG, MD 20878, |
| Loan Amount: | $ 693,000.00 |
| Pay to the order of : | **The CIT Group/Consumer Finance, Inc.** |
| without recourse: | Wilmington Finance, Inc. |
| By: | Don Malabuyo |
| Title: | Designated Signer |

Borrower: LUIS JAVIER MARINO AND ELSIE MARINO

Note Date: 6/5/2006

## ALLONGE TO NOTE

PAY TO THE ORDER OF

The Bank of New York Mellon
as Trustee of
CIT Mortgage Loan Trust 2007-1
WITHOUT RECOURSE

THE CIT GROUP/CONSUMER FINANCE, INC.

Authorized Signature

Frank Lenartowicz, Assistant Vice President
CIT Group/Consumer Finance, Inc.

Prepared by:
The Law Offices of Jeffrey Nadel
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705
File No: [redacted]

DEED OF REMOVAL AND APPOINTMENT OF SUCCESSOR TRUSTEES

THIS DEED OF REMOVAL AND APPOINTMENT OF SUCCESSOR TRUSTEES, made this 8th day of June, 2017, by The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, (hereinafter "Current Noteholder") by assignment(s) or endorsement(s) from Wilmington Finance, Inc..

WHEREAS, on June 5, 2006, Elsie Marino and Luis Javier Marino, Borrower(s), executed a Deed of Trust to Metropolitan Title & Settlement LLC, Trustee(s), said Deed of Trust being recorded among the Land Records of Montgomery County, Maryland in Liber 32623, Folio 635 to secure payment of the certain Note of even date therewith in the original sum of Six Hundred Ninety-Three Thousand, and 00/100 Dollars ($693,000.00) to the original noteholder and encumbering certain real property known as:

**LOT NUMBERED TWO (2), IN A SUBDIVISION KNOWN AS "HALLMAN'S ADDITION TO QUINCE ORCHARD", AS PER PLAT RECORDED IN PLAT BOOK 80 AT PLAT 8242, AMONG THE LAND RECORDS OF MONTGOMERY COUNTY, MARYLAND.**
Premise being known as 12701 Darnestown Road, Gaithersburg, MD 20878

WHEREAS, the Deed of Trust authorizes the holder of the indebtedness secured by the Deed of Trust, at its option, to remove original trustee(s) and appoint substitute trustee(s) and it now being the intent of the current Noteholder to so appoint substitute trustee(s) in place of the original trustee(s) in exercise of the powers set forth therein.

NOW, THEREFORE, the Current Noteholder secured by the Deed of Trust hereinabove referred to, in exercise of the powers under the terms of said Deed of Trust, does hereby appoint **Jeffrey Nadel, Scott Nadel, Daniel Menchel and Michael McKeown, any of whom may act independently, as Substitute Trustees**, with all the rights, powers and duties originally conferred by said Deed of Trust upon the said Metropolitan Title & Settlement LLC, Original Trustee(s) or any other Original Trustee(s) or any other subsequently appointed trustee(s) or substitute trustee(s) as aforesaid.

AND, FURTHERMORE, the powers enumerated in the Deed of Trust, having been granted to two or more trustees, may be exercised by any one of them, independently of the other(s), or by all acting together for the purposes of the foreclosure action, including but not limited to court appearances and execution of any and all pleadings, filings, court documents, or reports mandated by the Rules of Maryland and/or local custom.

IN WITNESS WHEREOF, the said Grantor has caused these presents to be executed as of the day and year first hereinabove written.

Your affiant further asserts that the foreclosing party has the right to foreclose and the basis for such assertion is the secured party's ownership/holding of the Note and/or Deed of Trust.

**The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, by Caliber Home Loans, Inc., f/k/a Vericrest Financial, Inc., as its attorney in fact**

By: ______________________

Name: Abraham Gaytan

Title: Authorized Signatory

Address: 16745 W BERNARDO DR # 300, SAN DIEGO, CA 92127

Telephone Number: (858) 649-5791

State of ____________________}
County of ___________________} ss.

Subscribed and sworn to before me this ____ day of ___________, 201__.

______________________________
Notary Public

My commission expires: ___________

Mail to:

Law Offices of Jeffrey Nadel
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705

Caliber/Marino

"See attached"

# ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Diego )

On June 8, 2017 before me, Latisha Bell, Notary Public
(insert name and title of the officer)

personally appeared Abraham Gaytan
,who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________ (Seal)
Latisha Bell, Notary Public

LATISHA BELL
COMM. # 2144492
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. February 28, 2020
GSN1

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

Jeffrey Nadel, Scott Nadel, Daniel Menchel and Michael McKeown
4041 Powder Mill Road, Suite 415
Calverton, MD 20705

Civil No.

Substitute Trustees
Plaintiff

Elsie Marino
Luis Javier Marino
12701 Darnestown Road
Gaithersburg, MD 20878

Defendant(s)

**AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT PURSUANT TO MD. ANN. CODE RP § 7-105.1 (E) (2) (III)**

I HEREBY CERTIFY that The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1 is the owner of the debt instrument secured by the Mortgage or Deed of Trust which is the subject of the instant foreclosure action. Your affiant further asserts that the foreclosing party has the right to foreclose and the basis for such assertion is the secured party's ownership/holding of the Note and/or Deed of Trust.

I solemnly affirm under the penalties of perjury that the contents of the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

Date: 6/20/2017

The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, by Caliber Home Loans, Inc., f/k/a Vericrest Financial, Inc., as its attorney in fact

By: [signature]

Name: Naomi Feistel

Title: Authorized Officer

Address: 16745 W BERNARDO DR # 300, SAN DIEGO, CA 92127

Telephone Number: 858-649-5717

LAW OFFICES OF
JEFFREY NADEL
4041 POWDER MILL ROAD
SUITE 415
CALVERTON, MD 20705
240-473-5000

FILE NUMBER: 18045

# NOTICE OF INTENT TO FORECLOSE

[Owner-Occupied Property - Mortgage Loan Default - No Prefile Mediation Offer – Federally Related Mortgage Loan]

This Notice is Required by Maryland Law (Real Property Article, §7-105.1(c), Annotated Code of Maryland).

**You are at risk of losing your home to foreclosure.** You have missed one or more payments on your mortgage loan or you are otherwise in default. If you do not bring the loan current, otherwise cure the default, or reach an agreement with your mortgage company to avoid foreclosure (such as a loan modification, repayment plan, or other alternative to foreclosure), a foreclosure action may be filed in court as early as 45 days from the post mark date of this notice.

There may be options available to avoid foreclosure, but you must act immediately.
You should seek housing counseling services now.

**TO ACCESS FREE HOUSING COUNSELING SERVICES, CALL THE MARYLAND HOPE HOTLINE AT 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG**

**Please follow the instructions that are outlined below.**

- Read this entire notice carefully and act immediately.

- Contact Caliber Home Loans, Inc.,, Loss Mitigation Department at 1800-401-6587 to discuss options available to avoid foreclosure.

- Complete the enclosed Loss Mitigation Application according to its instructions and include copies of all requested documents.

- Mail your completed Loss Mitigation Application and the accompanying documents using the addressed envelope provided.

- Keep a copy of your Loss Mitigation Application, accompanying documents, your mail receipt confirmation, and the date of mailing for your own record.

**If you have already sent a Loss Mitigation Application to your mortgage company, please call your mortgage company at the number above to confirm the status of your request.**

Beware of anyone offering to "save" your home or requesting an upfront fee before providing assistance. *If you believe you have been a victim of a scam, please contact Maryland's Office of the Commissioner of Financial Regulation by calling* 410-230-6077 *or visiting* www.dllr.state.md.us/finance. Free resources are available at the Maryland HOPE Hotline at 1-877-462-7555 or go to www.MDHOPE.org. **Attached is a list of government and nonprofit foreclosure-related resources available to help you.**

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

Regs 2/1/2015

If you have funds available to bring your loan current, contact Caliber Home Loans, Inc.,, Loss Mitigation Department at 1800-401-6587, before sending any money to your mortgage company. When you call, ask for the amount needed to reinstate your loan.

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

## HOPE Housing Counselors Network

| ORGANIZATION | JURISDICTION | ZIP | PHONE NUMBER | WEB ADDRESS |
|---|---|---|---|---|
| Allegany County HRDC | Allegany | 21502 | 301-783-1704 | www.alleganyhrdc.org |
| Anne Arundel County Economic Opportunity Committee, Inc* | Anne Arundel | 21401 | 410-626-1900 | www.aaceoc.com |
| Arundel Community Development Services, Inc. | Anne Arundel | 21401 | 410-222-7600 | www.acdsinc.org |
| Belair Edison Neighborhoods, Inc. | Baltimore City | 21213 | 410-485-8422 | www.belair-edison.org |
| Druid Heights Community Development Corp. | Baltimore City | 21217 | 410-523-1350 | www.druidheights.com |
| Garwyn Oaks Northwest Housing Resource Center | Baltimore City | 21216 | 410-947-0084 | www.go-northwesthrc.org |
| Neighborhood Housing Services of Baltimore | Baltimore City | 21231 | 410-327-1200 x133 | www.nhsbaltimore.org |
| Park Heights Renaissance, Inc. | Baltimore City | 21215 | 410-664-4890 | www.parkheightsmd.org |
| Southeast Community Development Corporation* | Baltimore City | 21224 | 410-342-3234 | www.southeastcdc.org |
| Comprehensive Housing Assistance, Inc. | Baltimore City and Baltimore County | 21209 | 410-466-1990 | www.chaibaltimore.org |
| Diversified Housing Development, Inc. | Baltimore County | 21244 | 410-496-1214 | www.diversifiedhousing.org |
| Eastside Community Development Corporation | Baltimore County | 21224 | 410-284-9861 | www.eastsidecdc.org |
| Delmarva Community Services, Inc | Eastern Shore | 21613 | 410-901-2991 | www.dcsdct.org |
| Maryland Rural Development Corp. | Eastern Shore | 21639 | 410-479-3566 | www.mrdc.net |
| Salisbury Neighborhood Housing Services | Eastern Shore | 21804 | 410-543-4626 | www.salisburynhs.org |
| Shore-Up!Inc. | Eastern Shore | 21804 | 410-749-1142 x307 | www.shoreup.org |
| City of Frederick/Frederick CAA | Frederick | 21701 | 301-600-1506 | www.cityoffrederick.com/fcaa |
| Garrett County Community Action Committee | Garrett and Allegany | 21550 | 301-334-9431 x149 | www.garrettcac.org |
| Home Partnership, Inc. | Harford and Cecil | 21085 | 410-679-3200 | www.homepartnershipinc.org |
| Housing Initiative Partnership, Inc.* | Montgomery and Prince George's | 20782 | 301-699-3835 | www.hiphomes.org |
| Centro de Apoyo Familiar (CAF) | Montgomery and Prince George's County | 20737 | 302-328-3292 | www.mycaf.org |
| Asian American Homeownership Counseling | Montgomery County | 20852 | 301-760-7636 | www.aa-hc.org |
| Latino Economic Development Corporation* | Montgomery County | 20902 | 1-866-977-LEDC (5332) | www.ledcmetro.org |
| HomeFree-USA* | Prince George's | 20782 | 301-891-8400 | www.homefreeusa.org |
| Kairos Development Corporation | Prince George's | 20746 | 301-899-1180 | www.kairosgroups.org |
| Sowing Empowerment and Economic Development* | Prince George's | 20737 | 301-458-9808 | www.seedinc.org |
| United Communities Against Poverty | Prince George's | 20731 | 301-322-5700 | www.ucappgc.org |
| Housing Options and Planning Enterprises, Inc.* | Prince George's and Charles | 20745 | 301-567-3330 | www.hopefinancial.org |
| Unity Economic Development Corporation | Prince George's and Charles | 20613 | 301-505-0331 | www.unityedc.org |

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

| | | | | |
|---|---|---|---|---|
| Southern Maryland Tri-County CAC | Southern Maryland | 20637 | 301-274-4474 | www.smtccac.org |
| Consumer Credit Counseling Service of Maryland and Delaware, Inc. | Statewide | 21228 (Main Office) 8 other offices | 1-866-731-8486 | www.cccs-inc.org |
| St. Ambrose Housing Aid Center, Inc. | Statewide | 21218 | 410-366-8550 x235 | www.stambros.org |
| National Community Reinvestment Coalition | Statewide | 20005 | 202-383-7702 | www.ncrc.org |
| Hagerstown Neighborhood Development Corp. | Washington | 21740 | 301-797-0900 | www.hagerstownhomestore.org |
| Washington County Community Action Committee | Washington | 21740 | 301-797-4161 | www.wccac.org |

*se habla espanol

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

# THE MARYLAND
# FORECLOSURE PROCESS AND TIME LINE

**[Owner-Occupied - Mortgage Loan Default - No Offer of Prefile Mediation]**

**A Notice of Intent to Foreclose** is enclosed with this document. In this notice you will find specific information about your mortgage, an application for loss mitigation, and instructions to complete the application. **THIS IS NOT YET A FORECLOSURE FILING.** A foreclosure action, called an order to docket or complaint to foreclose (the "OTD"), may not be filed against you in court until at least 45 days after this notice was mailed. The OTD must be filed in Circuit Court in order to move forward with foreclosure proceedings.

The OTD cannot be filed until your loan is 120 days past due, and you have been sent this notice.

You will receive a copy of the OTD and it will include one of the following affidavits:

1. **Preliminary Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company has not started or completed the review of your loan for foreclosure alternatives known as loss mitigation. An application for loss mitigation will be included in the OTD. **Complete and return the application immediately**; OR

2. **Final Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company believes it has no available alternatives to foreclosure. This affidavit will come with a **"Request for Postfile Foreclosure Mediation," an application, and instructions. You have only 25 days to request foreclosure mediation after you receive these documents.** To request foreclosure mediation you must send the completed application with a non-refundable fee of $50 to the Circuit Court.

* If your order to docket includes a Preliminary Loss Mitigation Affidavit, **open all future mail** because you may receive a Final Loss Mitigation Affidavit in as soon as 28 days.

**Foreclosure Mediation:**
You will have the opportunity to request foreclosure mediation after you receive the Final Loss Mitigation Affidavit. Foreclosure mediation is a process that allows you, a representative from your mortgage company, and a neutral third-party mediator from the Maryland Office of Administrative Hearings to meet and discuss alternatives to foreclosure. The goal of foreclosure mediation is to help you avoid foreclosure. At mediation, you and your mortgage company may agree to an option to avoid foreclosure. However, making a request for foreclosure mediation does not guarantee a loan modification or other relief.

**TO ACCESS FREE HOUSING COUNSELING SERVICES, CALL THE MARYLAND HOPE HOTLINE AT 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG**

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

**The following is important information about your mortgage loan:**

Date of Notice: April 19, 2017

Address of Property Subject to This Notice: 12701 Darnestown Road
Gaithersburg, MD 20878

Name of Borrower(s): Elsie Marino and Luis Javier Marino

Mailing Address of Borrower(s): Luis Javier Marino
20228 Halethorpe Ln
Germantown, MD 20876

Elsie Marino
12701 Darnestown Road
Gaithersburg, MD 20878

Luis Javier Marino
12701 Darnestown Road
Gaithersburg, MD 20878

Name of Record Owner (if different from Borrower(s)):

Mailing Address of Record Owner (if different from Borrower(s)):

Name of Secured Party: The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1

Telephone Number of Secured Party: 1800-401-6587

(If the secured party is a trust, real estate mortgage investment conduit (REMIC), or the like, the secured party may insert the telephone number of its authorized loan servicer.)

Name of Loan Servicer (if different from Secured Party): Caliber Home Loans, Inc.,

Telephone Number of Loan Servicer (if applicable): 1800-401-6587

Mortgage Loan Number: [redacted]

Lien Position (Indicate whether first or subordinate lien): 1

Date Most Recent Loan Payment Received: August 16, 2016

Period to Which Most Recent Mortgage Loan Payment Was Applied: August 2016

Date of Default: September 2, 2016

Total Amount Required to Cure Default as of the Date of this Notice: $34,567.49

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

(If you wish to reinstate your loan by paying all past due payments and fees, please call the mortgage company and ask for the total amount required to cure the default and reinstate the loan.)

Your mortgage loan payment is currently 229 days past due and is in default

Name of Mortgage Lender (if applicable): Wilmington Finance, Inc.

Maryland Mortgage Lender License Number (if applicable): NA

Name of Mortgage Loan Originator (if applicable): NA

Maryland Mortgage Loan Originator License Number (if applicable): NA

**NOTE: The data contained in this Notice of Intent to Foreclose is electronically filed with the Commissioner of Financial Regulation in accordance with COMAR 09.03.12.02.**

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

# NOTICE OF INTENT TO FORECLOSE

# LOSS MITIGATION PACKET

**Contains:**

- Maryland Foreclosure Process and Timeline (Loss Mitigation/Postfile Mediation)
- Instructions for Loss Mitigation
- Loss Mitigation Application

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

# THE MARYLAND
# FORECLOSURE PROCESS AND TIME LINE

Owner-Occupied Property - Loss Mitigation and Postfile Mediation Option – Federally Related Mortgage Loan

**A Notice of Intent to Foreclose** is enclosed with this document. In this notice you will find specific information about the mortgage, an application for loss mitigation, and instructions to complete the application. **THIS IS NOT YET A FORECLOSURE FILING.** A foreclosure action, called an order to docket or complaint to foreclose (the "OTD"), may not be filed against you in court until at least 45 days after the post mark date of this notice was mailed and your loan is more than 120 days delinquent. The OTD must be filed in Circuit Court in order to move forward with foreclosure proceedings.

You will receive a copy of the OTD and it will include one of the following affidavits:

1. **Preliminary Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company has not started or completed the review of your loan for foreclosure alternatives known as loss mitigation. An application for loss mitigation will be included in the OTD. **Complete and return the application immediately**; OR

2. **Final Loss Mitigation Affidavit, which** will be filed with the OTD if the mortgage company believes it has no available alternatives to foreclosure. This affidavit will come with a **"Request for Postfile Foreclosure Mediation," an application, and instructions. You have only 25 days to request foreclosure mediation after you receive these documents.** To request foreclosure mediation you must send the completed application with a non-refundable fee of $50 to the Circuit Court.

* If the OTD includes a Preliminary Loss Mitigation Affidavit, **open all future mail** because you may receive a Final Loss Mitigation Affidavit in as soon as 28 days.

**TO ACCESS FREE HOUSING COUNSELING SERVICES, CALL THE MARYLAND HOPE HOTLINE AT 1-877-462-7555 OR GO TO WWW.MDHOPE.ORG**

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***

Regs 2/1/2015

**Foreclosure Mediation:**
You will have the opportunity to request foreclosure mediation after you receive the Final Loss Mitigation Affidavit. Foreclosure mediation is a process that allows you, a representative from your mortgage company, and a neutral third party mediator from the Maryland Office of Administrative Hearings to meet and discuss alternatives to foreclosure. The goal of foreclosure mediation is to help you avoid foreclosure. At mediation, you and your mortgage company may agree to an option to avoid foreclosure. However, making a request for foreclosure mediation does not guarantee a loan modification or other relief.

## INSTRUCTIONS FOR LOSS MITIGATION

- Contact Caliber Home Loans, Inc.,, Loss Mitigation Department at 1800-401-6587 to discuss options available to avoid foreclosure.

- You should seek housing counseling services now. To access free housing counseling services, call the Maryland HOPE Hotline at 1-877-462-7555 or go to **www.mdhope.org**.

- Complete the enclosed Loss Mitigation Application according to its instructions and include copies of all requested documents.

- Mail your completed Loss Mitigation Application and the accompanying documents using the addressed envelope provided.

- Keep a copy of your Loss Mitigation Application, accompanying documents, your mail receipt confirmation, and the date of mailing for your own record.

***THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.***






# LOSS MITIGATION APPLICATION

COMPLETE ALL PAGES OF THIS FORM

**See Instructions corresponding with numbers in brackets {} on form**

Loan Number: {1} ______________________

| BORROWER {3} | CO-BORROWER {4} |
|---|---|
| Borrower's Name | Co-Borrower's Name |
| Social Security No. Date of Birth | Social Security No. Date of Birth |
| Home phone number. with area code | Home phone number with area code |
| Cell or work number with area code | Cell or work number with area code |
| Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. | Email Address: ☐ Please check this box if you would like to receive loan modification status and missing document information via email. |

{5} Mailing address:

Property address (if same as mailing address, just check same) ☐ same

{6}
**I want to:** ☐ Keep the Property ☐ Sell the Property

**The property is my:** ☐ Primary Residence ☐ Second Home ☐ Investment

**The property is:** ☐ Owner Occupied ☐ Renter Occupied ☐ Vacant

{7}
Is the property listed for sale? ☐ Yes ☐ No
Have you received an offer on the property? ☐ Yes ☐ No

Date of offer:__________ Amount of offer: $ __________

Agent's Name? ______________________

Agent's Phone Number: ______________________

For Sale by Owner? ☐ Yes ☐ No

{8}
Have you contacted a housing-counseling agency for help ☐ Yes ☐ No
If yes, please complete the following:
Counselor's Name: ______________________

Agency Name: ______________________

Counselor's Phone Number: ______________________

Counselor's E-mail: ______________________

{9}
Who pays the real estate tax bill on your property:

☐ I do ☐ Lender does ☐ Paid by condo or HOA

Are the taxes current? ☐ Yes ☐ No

Condominium or HOA fees ☐ Yes ☐ No $__________

Paid to: ______________________

{10}
Who pays the hazard insurance premium for your property?

☐ I do ☐ Lender does ☐ Paid by condo or HOA

Is the policy current? ☐ Yes ☐ No

Name of Insurance Co.: ______________________

Insurance Co. Tel #: ______________________

COMPLETE ALL PAGES OF THIS FORM

**See Instructions corresponding with numbers in brackets {} on form**

**{11} Bankruptcy**

Have you filed for bankruptcy? ☐ Yes ☐ No If yes: ☐ Chapter 7 ☐ Chapter 13 Filing Date: ______________

Has your bankruptcy been discharged? ☐ Yes ☐ No Bankruptcy case number: ______________________________

**{12} Additional Liens/Mortgages or Judgments on this property:**

| Lien Holder's Name/Servicer | Balance | Contact Number | Loan Number |
|---|---|---|---|
| | | | |
| | | | |

**{13} HARDSHIP AFFIDAVIT**

I am requesting review under your loss mitigation program.

I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):

☐ My household income has been reduced. For example: unemployment, underemployment, reduced pay or hours, decline in business earnings, death, disability or divorce of a borrower or co-borrower.

☐ My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt.

☐ My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes.

☐ My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time.

☐ Other

COMPLETE ALL PAGES OF THIS FORM

**See Instructions corresponding with numbers in brackets {} on form**

{14} **Number of People in Household:**

| **Income**[1] | | **Assets** | | **Expenses** | |
|---|---|---|---|---|---|
| {15} Monthly Gross Wages | $ | {26}Checking Account(s) | $ | {37} First Mortgage Payment | $ |
| {16} Overtime | $ | {27} Checking Account(s) | $ | {38} Second Mortgage Payment | $ |
| {17} Child Support / Alimony / Separation [2] | $ | {28} Savings/ Money Market | $ | {39} Insurance | $ |
| {18} Social Security / SSDI | $ | {29} CDs | $ | {40} Property Taxes | $ |
| {19} Other monthly income from pensions, annuities or retirement plans | $ | {30}Stocks / Bonds | $ | {41} Credit Cards / Installment Loan(s) (total minimum payment per month) | $ |
| {20} Tips, commissions, bonus and Self-Employed Income | $ | {31} Other Cash on Hand | $ | {42} Alimony, child support payments | $ |
| {21} Rental Income | $ | {32} Other Real Estate (estimated value) | $ | {43} Net Rental Expenses | $ |
| {22} Unemployment income | $ | {33} Other: | $ | {44} HOA/Condo Fees / Property Maintenance | $ |
| {23} Food Stamps / Welfare | $ | {34} Other: | $ | {45} Car Payments | $ |
| | | | | {46} Food/Groceries | $ |
| | | | | {47} Utilities (Water/Electricity/Gas/ Trash) | $ |
| {24} Other | $ | {35} Other: | $ | {48} Other | $ |
| {25} Total (Gross Income) | $ | {36} Total Assets | $ | {49} Total Debt / Expenses | $ |

ALL INCOME MUST BE DOCUMENTED

[1] **Include combined monthly income and expenses from the borrower and co-borrower (if any).**

[2] **You are not required to disclose Child Support, Alimony or Separation Maintenance income, unless you choose to have it considered by your servicer.**

**LOSS MITIGATION APPLICATION**

**ACKNOWLEDGMENT AND AGREEMENT**

*In making this request for consideration under your loss mitigation program, I certify under penalty of perjury:*

That all of the information in this document is truthful and the event(s) identified on page one is/are the reason that I need to request a modification of the terms of my mortgage loan, short sale or deed-in-lieu of foreclosure.

I understand that the Servicer, ________________________________ , or its agents may investigate the accuracy of my statements and may require me to provide supporting documentation. I also understand that knowingly submitting false information may violate the law.

I understand that the Servicer will pull a current credit report on all borrowers obligated on the Note.

I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this document, the Servicer may cancel any loss mitigation agreement and may pursue foreclosure on my home.

That my Property is owner-occupied; I intend to reside in this property for the next twelve months; I have not received a condemnation notice; and there has been no change in the ownership of the Property since I signed the documents for the mortgage that I want to modify.

I am willing to provide all requested documents and to respond to all Servicer questions in a timely manner.

I understand that the Servicer will use the information in this document to evaluate my eligibility for a loan modification or short sale or deed-in-lieu of foreclosure, but the Servicer is not obligated to offer me assistance based solely on the statements in this document.

I am willing to commit to housing counseling if it is determined that my financial hardship is related to excessive debt.

I understand that the Servicer will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. I understand and consent to the disclosure of my personal information and the terms of any loss mitigation agreement to any third party that needs this information to process this application, including but not limited to: any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate liens (if applicable) mortgage loan(s); any companies that perform support services in conjunction with my mortgage; any HUD-certified housing counselor; and government regulators.

{50}________________________________________ ____________________
Borrower Signature Date

________________________________________ ____________________
Co-Borrower Signature Date

**Instructions for Completing the Loss Mitigation Application**

**The numbers for each item below correspond to the same numbers in the form above.**

{1} Your loan number on your mortgage loan statement.

{2} Your loan ''Servicer'' is the financial institution that collects your monthly payment.

{3} The borrower section must include information on the person whose name is on the ''Note'' for the mortgage loan.

{4} The co-borrower is a second person on the Note for the mortgage loan. Do not fill out this section for someone who is not obligated on the Note for the mortgage loan.

{5} Please provide a mailing address and a residential ''Property'' address if different. The Property address should correspond to the mortgage for which you are submitting a Loss Mitigation Application.

{6} For this section you should choose one option for each question.

{7} If your Property is not listed for sale, you do not need to fill out the rest of Section 7. Only include offers for sale that you received in the past year.

{8} HUD-approved counselors are available free of charge and can be located on the HUD website at www.HUD.gov.

{9} If your real estate taxes and property insurance are part of the monthly payment that you make to your servicer, select ''lender does.'' ''HOA'' means Homeowner's Association.

{10} If your hazard insurance premium is part of the monthly payment that you make to your servicer, select ''lender does.'' ''HOA'' means Homeowner's Association.

{11} The filing date indicates when you officially filed for bankruptcy. Only check the ''yes'' box for a discharged bankruptcy if you received a discharge from bankruptcy.

{12} Additional liens include second (or third) mortgages and home equity lines of credit.

{13} Please select as many hardships as apply to your situation. You can use the extra lines to explain your hardship.

{14} Indicate the number of people in your household who contribute to the total income.

{15} Monthly gross wages are what you receive before taxes. Use your most current pay stub to find this amount.

{16} This amount should be listed on a current pay stub.

{17} If you receive child support, alimony, or separation maintenance income, you are not required to report it.

{18} SSDI means Social Security/Disability Income.

{19} Only include if you are retired and collecting income from retired funds.

{20} Self-Employed or commission borrowers (1099) must provide a copy of the most recently filed Federal tax return with all schedules and the most recent quarterly or year-to-date profit/loss statement. You must also provide a copy of three (3) months recent and consecutive business bank statements, or personal bank statements if no business account exists. If organized as a corporation or partnership, you must provide the most recently filed corporate or partnership returns with all schedules.

{21} Only include rental income if used as part of your overall income. Include most recent tax return or current lease agreement or two cleared rent check copies.

{22} You must have at least nine months of unemployment income to report on this form.

{23} Report the amount indicated on your benefits letter. A copy of your award letter must be provided.

{24} Add all other income and report sum in this box.

{25} Add all amounts in income column (boxes 15-24) and report sum.

{26} - {28} Report amounts for all accounts, if applicable.

{29} ''CDs'' means certificates of deposit.

{30} - {31} Report amounts for all accounts, if applicable.

{32} Include estimated value for all other properties owned.

{33}-{35} Report any other assets other than the value of life insurance or retirement plans, such as 401K, pension funds, IRAs

{36} Add all amounts in assets column (boxes 37-45) and report sum.

{37} This amount can be found on your statement for your first mortgage.

{38} If applicable, this amount can be found on the statement for your second mortgage or home equity lines of credit.

{39} This refers only to homeowner's insurance and should be reported only if you pay this yourself.

{40} Only report these taxes if you pay them yourself.

{41} Add all credit cards and installment payments and report sum here.

{42} If you are responsible for paying child support or alimony, you must report the amount here.

{43} Report amount if your total rental income does not cover your total rental expenses.

{44} ''HOA'' means Homeowner's Association.

{45} Include car payments only if you are the owner of the vehicle.

{46} Include all household food expenses.

{47} Include all expenses for utilities (water, gas, electricity, trash).

{48} Include any other pertinent household expenses.

{49} Add all amounts in expense column (boxes 26-35) and report sum.

{50} Please be sure to read the entire Loss Mitigation Application Acknowledgement and Agreement before signing.






**USE AS INCOME VERIFICATION FOR CALIBER LOAN # ________________**

**BORROWER NAME: ________________________________**

# LETTER OF VERIFICATION: CONTRIBUTION TO HOUSEHOLD INCOME

Date ____________________

To: Caliber Home Loans:

**This letter is written to state that I, ______________________, contribute monthly household income in the amount of $ ____________ per month. My relationship to your current borrower is ____________________. I have attached 2 months of my most recent income documentation to verify the source of the income. I state that this information provided is correct and to the best of my knowledge.**

**Respectfully,**

________________________________

Signature Required

**LET US GUIDE YOU HOME**






# NON-BORROWER CONTRIBUTOR CREDIT REPORT AUTHORIZATION

**Caliber Account Number: #** ______________________________

**Borrower Name(s) (please print):** ______________________________

**Each of the undersigned hereby acknowledges that Caliber Home Loans, Inc., as servicer for the owner of the above-referenced mortgage loan, has permission to verify and to obtain any credit information or data, for any legitimate business purpose through any source, including a consumer reporting agency. (Non-borrower contributor(s) authorizing Caliber to pull their credit report must sign, date and provide their social security number below)**

X ______________________________ ______________
Non-borrower Contributors Signature Date

______________________________
Printed Name

______________________________
Social Security #

X ______________________________ ______________
Non-borrower Contributors Signature Date

______________________________
Printed Name

______________________________
Social Security #



**LET US GUIDE YOU HOME**

## Loss Mitigation Options and Eligibility Requirements

As your mortgage loan servicer, we understand that you may be experiencing financial difficulty with making your mortgage payments and would like to discuss your options to make your mortgage payment affordable and avoid foreclosure. We will determine if you qualify based on your financial situation. To conduct this evaluation, we need you to submit the attached Loss Mitigation Application, and documentary evidence of all income.

Please see the workout options and eligibility requirements below for the loan that is the subject of this Notice or filing.

Options For Keeping Your Home

- Repayment Plan - A temporary agreement which allows for repayment of the unpaid past-due debt along with continued regular mortgage payments. The unpaid past due debt may include principal, interest, fees, and/ or costs incurred by the lender.

  Eligibility Requirements for this option require a portion of the unpaid past due debt as a down payment, with the remainder of the unpaid debt being spread out over a period of months. You will make the additional payment along with your regular monthly mortgage payment. In order to qualify for this option, you must be able to make the required payments as outlined in the plan.

- Loan Reinstatement - If you have the financial ability to bring your loan current, your lender/servicer will accept the funds needed to bring the loan current until the day of your foreclosure sale. In addition to the monthly mortgage payment, late charges and other amounts due on your loan obligation you may be required to pay all outstanding attorney's fees and costs of collection.

- Loan Modification - A loan modification allows you the option to repay the loan on newly agreed upon terms, which may include lowering the interest rate, placing amounts past due at the end of the loan, and/or extending the term of the loan.

  Eligibility Requirements for a loan modification are determined by your ability to pay (which may require a down payment), the current value of the home, and the hardship suffered.

- Forbearance - An agreement whereby the lender may accept less than the total monthly payment or agree not to proceed with foreclosure and/or collection of payments, for a period of time, to allow you the time to re-establish the ability to make the required payments.

  Eligibility Requirements for this option are determined on your current ability to pay and the nature of the hardship experienced.

Options For You If You Do Not Wish And/Or May Not Be Able To Afford To Keep The Property

- Deed-In-Lieu - An option that allows you to voluntarily deed your property to the owner of your mortgage in order to avoid foreclosure. In return, you agree to vacate the property on an agreed upon date leaving the property in "broom swept" condition. You must allow the lender/servicer access to inspect your property (which may include the interior of the home) should such request be made.

  Eligibility Requirements include your inability to pay the debt. Your lender may ask you to complete a financial questionnaire (which may require a hardship letter). Also there can be no other liens or judgments against the property other than your mortgage obligation that is currently in default. In other words, title must be "clear and marketable". In some circumstances your lender may want you to prove that your taxes, insurance, and utilities are current.

- Short Sale - This option allows you to avoid foreclosure by selling your property for less than the total amount owed on the account (subject to agreement by your servicer/lender), resulting in the release of the servicer/lender's lien on your home.

  In order to be eligible you must no longer be able to maintain the mortgage payments, and you must demonstrate that the current property value is below your current indebtedness. The lender may ask you to complete a financial questionnaire (which may require a hardship letter) in order to evaluate your ability to pay the debt. The property must have been listed with a real_estate agent. You must also have a buyer willing to purchase the property for the current fair market value. You must provide a Real Estate Purchase Agreement (with no contingencies), Estimated Settlement Statement and Listing Agreement to the servicer for review. If requested, you must allow the lender/servicer access to appraise/value your property.

- Temporary Suspension of Payments - This option allows you to stop making payments on the loan to allow the sale of property. The sale should completely payoff your loan.

  Eligibility Requirements are that the property has enough value so that the sale of the property will pay off the full amount of the loan (which may include any fees and/ or costs incurred by your lender). You must have the property listed with a real estate agent. Also the lender must agree not to proceed with foreclosure for an agreed upon period to allow borrower time to sell the property. Usually, the amount of time allowed will be based upon the value of the property, the likelihood of obtaining a sufficient price, and any other financial circumstances that may be relevant.

You must take the first step by contacting us, at (800) 621-1437 from Mon - Thurs 8:00 am to 9:00 pm CST, Fri 8:00 am to 7:00 pm, Sat 8:00 am to 4:00 pm. You may also write to us at 13801 Wireless Way Oklahoma City, OK 73134. Be sure to include your name and loan number in your correspondence.

Please be advised that this letter does not constitute a commitment to approve any workout plan.

IN WITNESS WHEREOF, the said Grantor has caused these presents to be executed as of the day and year first hereinabove written.

Your affiant further asserts that the foreclosing party has the right to foreclose and the basis for such assertion is the secured party's ownership/holding of the Note and/or Deed of Trust.

**The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1, by Caliber Home Loans, Inc., f/k/a Vericrest Financial, Inc., as its attorney in fact**

By: ______________________

Name: Abraham Gaytan

Title: Authorized Signatory

Address: 16745 W BERNARDO DR # 300, SAN DIEGO, CA 92127

Telephone Number: (858) 649-5791

State of ____________________}
County of ___________________} ss.

Subscribed and sworn to before me this ____ day of ____________, 201__.

______________________________
Notary Public

My commission expires: ___________

Mail to:

Law Offices of Jeffrey Nadel
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705

Caliber/Marino

"See attached"

## ACKNOWLEDGMENT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of San Diego )

On June 8, 2017 before me, Latisha Bell, Notary Public
(insert name and title of the officer)
personally appeared Abraham Gaytan
,who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________ (Seal)
Latisha Bell, Notary Public

LATISHA BELL
COMM. # 2144492
NOTARY PUBLIC•CALIFORNIA
SAN DIEGO COUNTY
My Comm. Exp. February 28, 2020