IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| ELSIE MARINO, | Case No: 17-cv-02116-GJH |
| Consumer-Plaintiff, | |
| vs. | |
| JEFFREY NADEL d/b/a LAW OFFICES OF JEFFREY NADEL; SCOTT E. NADEL; DANIEL MENCHEL; MICHAEL MCKEOWN; CALIBER HOME LOANS, INC.; THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1 | PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANTS CALIBER HOME LOANS, INC. AND THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1 TO DISMISS PLAINTIFF'S COMPLAINT |
| Defendants, | |

Unrepresented Consumer-Plaintiff, Elsie Marino (herein "Consumer" or "Plaintiff"), respectfully submits this her opposition to the motion of Defendants Caliber Home Loans, Inc. ("Caliber") and The Bank of New York Mellon, as Trustee for CIT Mortgage Loan Trust 2007-1 ("BNYM") (collectively, "Defendants") to dismiss verified claims she brought against them as debt collectors under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., ("FDCPA"). Plaintiff's specific grounds are set forth in the following Memorandum.

Respectfully submitted,

*Elsie Marino*

Elsie Marino, Consumer-Plaintiff
12701 Darnestown Road
Gaithersburg, MD 20878

1

**PLAINTIFF ELSIE MARINO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTION OF DEFENDANTS BNYM AND CALIBER TO DISMISS PLAINTIFF'S COMPLAINT**

**Counter Statement of the Facts.**

Plaintiff embraces, for the purpose of this motion, Defendants' statement, Memo at 2, that all interest in the Deed of Trust was assigned to BNYM, except that Caliber is the current servicer of the alleged "debt," not "Loan." Defendants also omitted one judicially noticeable fact which they themselves attempt to raise as a defense on page 9: Paragraph 20 of the Deed of Trust. What is clear is that BNYM received an interest in the Deed of Trust on February 22, 2010 and noted that interest in the public record. The purported indorsement (Doc. 1-6, Pages 50-51 of 77) on the purported Allonge to the Note is not dated, but Plaintiff alleges transfer of the debt after default (Complaint, ¶¶ 18, 41, 53, 57-59). Liberally construed, when viewed in the best light for Plaintiff under Evid. R. 106, her Complaint raises the inference that her Note had been sold to BNYM *together with the Security Instrument* considering the language of Paragraph 20 of the Deed of Trust alleged by the Defendants in the state court (Plaintiff's Exhibit F, Doc. 1-6, Page 33 of 77), and as discovery may corroborate, that the interest in the Deed of Trust and the Note were transferred together on February 22, 2010, after notice of default. See McCray v. Federal Home Loan Mortgage Corp., No. 15-1444, 839 F.3d 354 (4th Cir. 10/07/2016).

**Allegations in the Complaint.**

In the first paragraph on page 3 of their Memorandum, Defendants misstate the facts alleged. The Substitute Trustees hadn't been appointed until June 8, 2017. See Complaint, ¶ 39. Debt collectors Jeffrey Nadel and Scott E. Nadel sent the communications dated January 23, 2017 and April 19, 2017 ***prior to being Substitute Trustees***. Significantly, ***interposed*** between those two dates was the transfer of the debt to BNYM on April 07, 2017 as noted by the recorded

Assignment. Consumer stands on her verified Complaint.

**Standard of Review.**

Plaintiff agrees with the standard of review for a motion pursuant to Fed. R. Civ. P. 12(b)(6) except to add the following: "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001) quoting Duncan v. Walker, 533 U.S. 167, 174 (2001). Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its consumer protection purposes.

**Argument.**

Defendants' suggestion that the Complaint is insufficient to meet the pleading requirements is manifestly without merit: Defendants successfully "deciphered" that:

> (i) Caliber violated 15 U.S.C. § 1692c(a) and (b) by recording the Assignment and communicating with the Maryland Circuit Court through the Substitute Trustees, including through the Affidavit of Debt (Doc. No. 1, ¶ 74); (ii) Caliber violated 15 U.S.C. § 1692(e)(11) because the Assignment failed to disclose that it was an attempt to collect a debt and failed to disclose it was a communication from a debt collector (Doc. No. 1, ¶ 75); and (iii) Defendants violated 15 U.S.C. § 1692e by collecting on the debt without a creditor (Doc. No. 1, ¶ 77).

Defendants' Memo at 6. Consumer's verified Complaint is sufficient in accord with the Twombly-Iqbal heightened pleading standards with factual allegations enough to raise a right to relief above the speculative level as to each Defendant. Stating the claims upon which relief can be granted as to six defendants required stating numerous facts and their significance under the FDCPA in numerous paragraphs.

The standard for liability, top of p. 7, is correct, except Plaintiff relies on the statute itself instead of Henson stating it "more simply" at 817 F.3d 136. Defendants are factually alleged to

be debt collectors, and their citing to Radford, a District of Hawaii case, has no demonstrated effect on the factual allegations here in light of the FDCPA. Defendants' suggestion, bottom of 7, that "BNYM is collecting its own debt, and has not used the name of another" goes against the facts in the Complaint; BNYM is a Trustee—not a bank—collecting for "another." BNYM is alleged to be a debt collector, 15 U.S.C. § 1692a(6).

Pursuant to 15 U.S.C. § 1692g(a) a debt collector is required to provide certain information to the debtor within five days of the initial communication. Pursuant to 1692g(b), if a consumer disputes the debt, the debt collector must cease collection activities until it verifies the debt. Plaintiff alleges Defendants failed to cease collection activities and failed to validate the debt. The FDCPA does not exclude BNYM's Assignment communicated in the public record as an initial communication by a subsequent debt collector which triggers the requirements of 15 U.S.C. § 1692g. Here's why:

Plaintiff would correct Defendants misstatement of what the law has always been, middle of p. 8: There can only be one initial communication ***from each debt collector***. See Complaint, ¶ 17. The Ninth Circuit recently reached a holding that "if there are multiple debt collectors that try to collect a debt, each one must send the required notice after its first communication with the alleged debtor about the debt." Hernandez v. Williams, Zinman & Parham PC, 829 F.3d 1068, 1070 (9th Cir. 2016). The Fourth Circuit has not weighed in on this issue which is split among

the circuits. According to the CFPB and FTC[1], "Section 1692g(a) unambiguously imposes its notice requirement on 'a debt collector,' a term that encompasses all debt collectors, whether the first, second, or umpteenth to attempt to collect a particular debt." Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez v. Williams, Zinman & Parham, P.C., 9th Cir., No. 14-15672, Dkt. No. 14, filed 08/20/2014 (published at https://www.consumerfinance.gov/policy-compliance/amicus/briefs/hernandez-williams-zinman-parham/) As a direct result, the Ninth Circuit Court of Appeals, while pointing out that none of its Sister Circuits has decided this point in a published decision, reasoned as follows:

> The question presented here is whether the phrase "the initial communication" as used in the FDCPA means the first communication from the initial debt collector that tries to collect, or whether it means the first communication a consumer receives from any collector about a debt, including subsequent collectors that communicate about the same debt.
> Applying well-established tools of statutory interpretation and construing the language in § 1692g(a) in light of the context and purpose of the FDCPA, we hold that the phrase "the initial communication" refers to the first communication sent by any debt collector, including collectors that contact the debtor after another collector already did. In other words, if there are multiple debt collectors that try to collect a debt, each one must send the required notice after its first communication with the alleged debtor about the debt.
> \* \* \*
> [This is] consistent with the FDCPA's broad imposition of requirements on all debt collectors throughout the lifecycle of a debt . . . restricting the validation notice requirement to the initial debt collector produces a loophole that would, in practice, undermine consumers' efforts to verify their debts and Congress's mandate that collection efforts halt until verification occurs.

---

[1] Plaintiff respectfully cites to an amici brief filed by the CFPB for consideration by this Court for this reason: The Consumer Financial Protection Bureau has delegated rulemaking authority under the FDCPA, and the Federal Trade Commission shares concurrent authority to enforce the FDCPA with the Bureau. See 15 U.S.C. § 1692l (setting forth administrative enforcement and rulemaking authority under the FDCPA, see Hernandez v. Williams, Zinman & Parham, P.C., No. 14-15672, n.3 (9th Cir. 07/20/2016); Brief of Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission, Hernandez, Dkt. No. 14, Page 28 of 42, filed 08/20/2014 ("Congress vested authority for administering the FDCPA in the CFPB, which is empowered not only to enforce the Act, but also to promulgate regulations and to issue advisory opinions. 15 U.S.C. §§ 1692k(e), 1692l(b)(6), (d); see also 12 U.S.C. § 5512(b)(4)(B) (addressing deference due to CFPB interpretations of federal consumer financial law). Its interpretation of the Act is therefore entitled to deference." See also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) (holding that "if the statute is silent or ambiguous with respect to the specific issue" a court should defer to a reasonable administrative interpretation of the statute).

Hernandez. In their Amici Brief, at page 33 of 42, the CFPB and FTC jointly explained that:

> [A]pplying § 1692g only to initial debt collectors would create a loophole that could strip consumers of their ability to stop attempts to collect debts they do not owe. The FDCPA bars a debt collector that receives a dispute under § 1692g(b) from continuing to attempt to collect the disputed debt until the debt is verified. 15 U.S.C. § 1692g(b). But courts have held that a debt collector has no affirmative obligation to verify the debt in response to the consumer's dispute so long as it halts its collection efforts. See, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1014 (11th Cir. 2004); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1031-32 (6th Cir. 1992). And nothing in the FDCPA prevents a creditor from enlisting a second debt collector to collect a disputed debt without verifying it first. If § 1692g did not apply to subsequent debt collectors, the new debt collector would have no obligation to verify the debt under § 1692g(b) and could pursue collection unhindered—even though no one ever responded to the consumer's dispute.

That's similar to what happened in this case. The Amici Brief states at p. 11 of 42:

> Exempting subsequent debt collectors from § 1692g would also create a loophole that could nullify § 1692g's debt-validation protection altogether. When a consumer disputes a debt with an initial debt collector, nothing in the FDCPA prevents the creditor from simply passing the debt to a second debt collector to collect, even where no one has verified the debt. If the second debt collector had no independent obligation to send consumers a validation notice, consumers would be unable to stop attempts to collect disputed, unverified debts—the precise problem that Congress designed § 1692g to prevent.

In return, the Ninth Circuit stated:

> But nothing in the statute prevents the debt collector from passing the debt on to a subsequent debt collector in lieu of responding to the verification demand. This is so because § 1692g(b) gives a debt collector a choice upon receiving a request for validation: "the collector 'may provide the requested validations and continue [its] debt collection activities, or it may cease all collection activities.'" Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 940 (9th Cir. 2007) (per curiam) (alteration omitted) (quoting Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997)). If a debt collector determined that collecting on a debt was "not worth the effort, "the collector would be at liberty to "sell the account." Id. And if the collector did sell the debt, the debt collector that purchased it, on WZP's reading, would be permitted to collect free from § 1692g's strictures, and the consumer would be effectively unable to obtain the information necessary to verify or dispute her debt. Such a loophole would render § 1692g almost a nullity, and we therefore decline to endorse WZP's interpretation. See N.Y. State Dep't of Soc. Servs. v. Dublino, 413 U.S. 405, 419–20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

Hernandez. Plaintiff requests the Court take judicial notice of, and give deference to, the Amici Brief and consider the resulting decision of the Ninth Circuit in Hernandez as persuasive holding that "if there are multiple debt collectors that try to collect a debt, each one must send the required notice after its first communication with the alleged debtor about the debt."

Defendants' argument relies on Senftle v. Landau, 390 F. Supp. 2d 463, 473 (D. Md. 2005), which cannot be persuasive any longer because it ignores the CFPB's and FTC's joint official interpretation of what the Act has *always* meant, which warrants deference. The January 23, 2017 letter was the initial communication from the Nadel Firm, i.e., Jeffrey and Scott Nadel. "The [April 19, 2017] letter is an initial communication subsequent to the April 07, 2017 Assignment in default." Complaint at ¶ 30. Defendants have provided no argument in relation to the statutory text itself or the legislative history such that the Court might conclude as a matter of law that the subsequent, ***intervening*** Assignment, and each of the two communications prior to and after such transfer of the debt on April 07, 2017, was ***not*** "the initial communication" from an initial or *subsequent* debt collector under § 1692g(a). How could the Defendants be collecting for a creditor identified as BNYM both times if there was an intervening change in ownership of the debt? Unlike Hernandez, this case has not had the benefit of discovery, which might better inform a judicial decision on this issue.

Defendants suggest, top of 9, that the pre-foreclosure recording of the Assignment is not an attempt to collect a debt. A similar argument was rejected by the Fourth Circuit in McCray:

> As we have previously explained, however, "nothing in [the] language [of the FDCPA] requires that a debt collector's misrepresentation [or other violative actions] be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay." Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 123 (4th Cir. 2014) (second emphasis added). To the contrary, we concluded that, "to be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice 'in connection with the collection of any debt' or in an 'attempt to collect any debt.'" Id. at 124; see also

> Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-34 (4th Cir. 2007); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 375-77 (4th Cir. 2006). **In Powell, we held that a law firm's filing of an "assignment of judgment" in a debt collection action qualified as a debt collection activity that triggered the protections of the FDCPA. 782 F.3d at 120-21.** Similarly, in Sayyed, we held that a motion for summary judgment filed in a debt collection action was "subject to the provisions of [the] FDCPA." 485 F.3d at 234. **And in Wilson, we held that a law firm that provided notice that it was preparing foreclosure papers and that thereafter initiated foreclosure proceedings could be a debt collector as defined by the FDCPA. 443 F.3d at 374-76. Indeed, Wilson directly controls this case.**
> In Wilson, a lender had retained a law firm and one of its attorneys "to foreclose on [the plaintiff's] property due to her alleged failure to make mortgage payments." 443 F.3d at 374. **The law firm and attorney wrote to the plaintiff "to announce that she was in default on her loan and that they were preparing foreclosure papers." Id. They also sent her a "validation of debt notice" pursuant to the FDCPA, which gave specific information concerning the amount of debt, the identity of the creditor, and the procedures for validating the debt. Id. at 374-75. We concluded that the law firm and the attorney were debt collectors under the FDCPA, holding that "Defendants' foreclosure action was an attempt to collect a 'debt.'" Id. at 378.**

McCray (emphasis added).

Plaintiff does not challenge the Assignment. As can be seen from their arguments, Defendants' violations come from a profound misapprehension of law, not bona fide error of fact. Caliber's and BNYM's subjective purpose in "merely" recording the transfer of the Deed of Trust which "served as a prerequisite to commencement of the [foreclosure] process is wholly irrelevant to the requirements and applicability of the FDCPA."

> See also Romea v. Heiberger & Associates, 163 F.3d 111, 116 (2d Cir. 1998) (discussing that notice required under Maryland's in rem eviction procedure involved debt collection under the FDCPA). As Romea makes clear, "the fact that [a] letter also served as a prerequisite to commencement of the [eviction] process is wholly irrelevant to the requirements and applicability of the FDCPA." Id.; see also Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227, 234 (3d Cir. 2005) (rejecting argument that debt collector's conduct "cannot be found to be covered by the FDCPA because all it ever tried to do was enforce a lien in the manner dictated by [state law]").

Complaint at ¶ 44.

On pages 10-11 of their Memo, Defendants quarrel with Plaintiff's short and plain allegation concerning "all" their communications [listing some] being misleading representations and deceptive means in connection with collection of a debt. But see McCray ("Thus, ___all___ of the defendants' activities were taken in connection with the collection of a debt or in an attempt to collect a debt.") (emphasis added).

Regardless of whether "Caliber and BNYM did not send the initial communication – nor were they required to do so" (Memo at 11), besides being direcly liable for regularly collect[ing] or attempt[ing] to collect, directly or *indirectly*, debts owed or due another in this case, they are each vicariously liable for the violative actions and omissions of the Nadel Firm, and Jeffrey and Scott E. Nadel—and then subsequently the Substitute Trustees—on Caliber's or BNYM's behalf as alleged in the verified Complaint.

**Conclusion.**

WHEREFORE, upon the sufficiency of the verified Complaint in stating a claim upon which relief can be granted, and for the foregoing reasons, the motion of Defendants BNYM and Caliber to dismiss the Complaint should be entirely denied.

Respectfully submitted,

*/s/ Elsie Marino*
Elsie Marino, Consumer-Plaintiff
12701 Darnestown Road
Gaithersburg, MD 20878

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of October, 2017, the foregoing was filed and served through the Court's CM/ECF system to all parties who have been served the Summons and Complaint, or made their appearance through Counsel of record.

*Elsie Marino*
Elsie Marino, Consumer-Plaintiff